This petition for a writ of mandamus presents a single question: Are investigative reports made by persons employed by the petitioners — Department of Mental Health and Mental Retardation ("DMHMR"), Kathy Sawyer as Commissioner of DMHMR, and Virginia Rogers as the former Commissioner of DMHMR — to act as police officers, pursuant to the provisions of § 22-50-21, Ala. Code 1975, discoverable in a civil proceeding arising out of the death of a patient in a hospital operated by DMHMR?
The trial court, after conducting an in camera review of the various documents and investigative reports, determined that they were discoverable. The petitioners ask us to direct the trial court to vacate its order holding that the reports are discoverable. This Court ordered answer and briefs in this case, and those have been filed. After examining the materials before us and considering the arguments of the parties, we are of the opinion that the trial court did not err in ordering the discovery of the investigative reports; therefore, we deny the petition.
On July 3, 1998, a staff member at Bryce Hospital, a mental-health facility operated by DMHMR, discovered patient Medhi Daversani in his bathroom with a bedsheet tied around his neck. Resuscitation efforts were unsuccessful; Daversani died. The investigation into his death was assigned to the bureau of special investigations ("BSI"), the investigative division of DMHMR. After its investigation, BSI filed a report in which it concluded that Daversani had committed suicide.
Eddie Nichols, as administrator of the estate of Medhi Daversani, sued DMHMR and the other petitioners, and filed numerous interrogatories, requests for admission, and requests for production, including a request that DMHMR produce the BSI reports relating to the investigation of Daversani's death. DMHMR objected to the production of the documents, citing § 12-21-3.1, Ala. Code 1975, which DMHMR contends makes the BSI reports not subject to a civil subpoena except upon proof, by substantial evidence, that the requesting party will suffer undue hardship if the documents are not produced and that the records, photographs, or witnesses are unavailable from other reasonable sources.
On April 25, 2001, the plaintiff filed a motion to compel the production of the BSI reports, and on May 8, 2001, after a conference call with the parties, the trial court, in consideration of the matters addressed *Page 593 
in the conference call, ordered DMHMR to file with the trial court all the materials Nichols had requested so the court could conduct an incamera inspection of the materials. On May 18, 2001, DMHMR filed its response to the motion to compel, along with an affidavit of Richard E. Von Koerner, and a copy of DMHMR Policy No. 80-10. The affidavit states, in substance, that BSI investigators are police officers and the policy states that DMHMR's case reports and files are confidential and are not to be released except under circumstances and in the manner provided in the policy. DMHMR, citing § 12-21-3.1 and § 22-50-21, Ala. Code 1975, argues that the BSI reports are protected from discovery.
On May 22, 2001, the trial court issued an order; that order stated, in part, that "[d]efendants have submitted for an in camera inspection various documents including investigative reports related to the death of Medhi Daversani." It further stated that "[t]he court has reviewed the documents and is of the opinion that said documents are relevant and discoverable," and it ordered DMHMR to provide the plaintiff with copies of the documents within 14 days. On June 5, 2001, DMHMR filed a motion to reconsider, again citing § 12-21-3.1 and § 22-50-21, Ala. Code 1975. DMHMR argued in its motion that the trial court "did not have before it any evidence that the Plaintiff will suffer any undue hardship if these documents are not produced and that these witnesses, records and photographs are unavailable from other sources." On June 15, 2001, the trial court denied the motion to reconsider. On June 19, 2001, the petitioners filed this petition for a writ of mandamus directing the trial court to vacate its order.
The central issue in this case is whether the provisions of §12-21-3.1 apply to the investigative reports prepared by investigators employed by DMHMR.
Section 12-21-3.1 is entitled "Subpoena of law enforcement officers and investigative reports; disposition of criminal matters." The statute provides, as follows:
 "(a) Neither law enforcement investigative reports nor the testimony of a law enforcement officer may be subject to a civil or administrative subpoena except as provided in subsection (c).
 "(b) Law enforcement investigative reports and related investigative material are not public records. Law enforcement investigative reports, records, field notes, witness statements, and other investigative writings or recordings are privileged communications protected from disclosure.
 "(c) Under no circumstance may a party to a civil or administrative proceeding discover material which is not authorized discoverable by a defendant in a criminal matter. Noncriminal parties may upon proper motion and order from a court of record: Secure photographs, documents and tangible evidence for examination and copying only by order of a court imposing such conditions and qualifications as may be necessary to protect a chain of custody of evidence; or protect the prosecutors', law enforcement officers', or investigators' work product; or to prevent the loss or destruction of documents, objects, or evidence. Such discovery order may be issued by a court of record upon proof by substantial evidence, that the moving party will suffer undue hardship and that the records, photographs or witnesses are unavailable from other reasonable sources.
 "(d) Discovery orders prior to the disposition of the criminal matter under investigation are not favored and should be granted only upon showing that the *Page 594 
 party seeking discovery has substantial need of the materials and is unable, without undue hardship, to obtain the substantial equivalent by other means.
 "(e) Nothing in this section shall preclude the disclosure of investigative reports, including the testimony of law enforcement officers, to a state administrative agency authorized by law to investigate or conduct administrative contested case hearings in any matter related to the suspension, revocation, or restriction of a professional license or registration for the protection of the public health and safety.
 "(f) For purposes of this section, a criminal matter is disposed of in any of the following ways:
 "(1) When the prosecuting authority has presented the matter to a grand jury and a no bill or true bill has been returned.
 "(2) After a written statement by the chief law enforcement officer of the agency conducting the investigation that the matter under investigation is closed.
 "(3) When the entity or individual under investigation has been tried and final judgment entered."
DMHMR contends that BSI, the investigative arm of DMHMR, should be entitled to the protection afforded by § 12-21-3.1, and that BSI investigators are "police officers" employed by DMHMR pursuant to the provisions of § 22-50-21, Ala. Code 1975. Section 22-50-21
provides as follows:
 "The State Mental Health Officer may appoint or employ one or more suitable persons to act as police officers to arrest intruders, trespassers and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals. Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings or lands or arrest them and may, without warrant, arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant. Such police officer shall have authority to summon a posse comitatus."
This Code section first appeared in the Alabama Code of 1896, § 2570, and was subsequently transferred to the Code of 1907, § 876; then to the Code of 1923, § 1461; then to the Code of 1940, T. 45, § 227; and finally to the 1975 Code.
This Court has held that "[b]ecause discovery involves a considerable amount of discretion on the part of the trial judge, the standard this Court will apply in reviewing his actions on a petition for writ of mandamus is whether there has been a clear showing that the trial court abused its discretion." Ex parte Clarke, 582 So.2d 1064, 1067 (Ala. 1991). This Court has also noted that "the trial court is in a better position to make discovery determinations than are we." Ex parte EmployersNat'l Ins. Co., 539 So.2d 233, 235 (Ala. 1989). In Ex parte HealthSouthCorporation, 712 So.2d 1086 (Ala. 1997), this Court stated:
 "In Ex parte Compass Bank, 686 So.2d 1135 (Ala. 1996), we set out the applicable standard governing this Court's review of discovery disputes in cases similar to this one: *Page 595 
 "`Mandamus is the "proper means of review to determine whether a trial court has abused its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders so as to prevent an abuse of the discovery process by either party." Ex parte Mobile Fixture Equipment Co., 630 So.2d 358, 360 (Ala. 1993). Mandamus is an extraordinary remedy requiring a showing that there is: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Edgar, 543 So.2d 682, 684 (Ala. 1989); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991); Ex parte Johnson, 638 So.2d 772, 773 (Ala. 1994).
 "`Because discovery involves a considerable amount of discretion on the part of the trial court, the standard this Court will apply on mandamus review is whether there has been a clear showing that the trial court abused its discretion. Ex parte Clarke, 582 So.2d 1064, 1067 (Ala. 1991); Ex parte McTier, 414 So.2d 460 (Ala. 1982).'
"Ex parte Compass Bank, 686 So.2d at 1137.
 "`Pursuant to Rule 26, Alabama Rules of Civil Procedure, a trial court is given authority to either limit or restrict discovery, and once the trial court chooses to so limit or restrict, its action will be liberally and broadly construed. This court will not, therefore, reverse unless it appears the trial court abused its discretion. We note that a finding of an abuse of discretion by the trial court in granting discovery requests is rarely found.'
 "Ex parte Sullivan, Long Hagerty, 567 So.2d 314, 314-15
(Ala.Civ.App. 1990)."
712 So.2d at 1088 (emphasis added).
DMHMR strongly insists that the investigative reports are not subject to discovery because, it argues, Nichols has not shown, by substantial evidence, "that [he] will suffer undue hardship and the records, photographs or witnesses are unavailable from other reasonable sources," as provided in § 12-21-3.1(c), Ala. Code 1975.
In the materials before this Court at this time, we do not have all the evidence that was before the trial judge when she ordered production of the investigative reports. Although it appears to us, based upon a reading of the pertinent statutes, that investigative reports made by police officers employed by DMHMR might be privileged, we cannot hold, based on the materials presently before us, that the trial judge abused her discretion in ordering that the evidence she examined in camera was "relevant and discoverable."
In this case, as we have previously stated, the trial court stated in its order that DMHMR has "submitted for an in camera inspection various documents including investigative reports related to the death of Medhi Daversani." The "various documents including investigative reports related to the death of Medhi Daversani" that were before the trial court and that she examined in camera are not before this Court in this mandamus petition. In fact, the materials available to this Court on a mandamus petition are very limited, but the materials that are before us show that the trial court was apprised by DMHMR that BSI investigators are law-enforcement officials. In fact, it is undisputed that the trial court conducted a conference call and that it considered the *Page 596 
arguments of both parties, but apparently there was no transcript of that conference call, and nothing that was said in that conference call is available to this Court to assist us in determining whether the trial court abused its discretion in this case.[1]
Based on the foregoing, we hold that the petitioners have failed to show a clear legal right to the relief they seek. In reaching this conclusion, we see no necessity to decide, at this time, whether BSI investigators are "law-enforcement" officials entitled to the protection from discovery provided by § 12-21-3.1, Ala. Code 1975. We note however, that even if BSI investigators are law-enforcement officials under the provisions of § 12-21-3.1., the trial court could order the production of the reports if Nichols could show that, as the moving party, he "will suffer undue hardship and that the records, photographs or witnesses are unavailable from other reasonable sources," §12-21-3.1(c). The petitioners, based on the materials before us, have not clearly shown that the trial court abused its discretion in ordering that the materials be produced. The petition for writ of mandamus is therefore due to be denied.
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e).
PETITION DENIED.
Moore, C.J., and See, Brown, Harwood, and Stuart, JJ., concur.
[1] Nichols, in his answer to the petition for the writ of mandamus, has included photocopies of several newspaper articles that relate to deaths that have occurred in state-owned and supported mental hospitals, and states that these deaths have been investigated only by BSI officers — employees of DMHMR. Some of the articles describe such procedures as being the "fox guarding the henhouse." We do not decide the legal issue presented in this case based on those newspaper articles, however. Any policy changes that may be required in investigating such deaths in state-owned or supported mental hospitals, in our view, are not the subject of this petition for the writ of mandamus.