The Alabama Department of Mental Health and Mental Retardation ("DMHMR") petitioned for a writ of mandamus directing the Montgomery Circuit Court to vacate a discovery order it entered in favor of Candace Lambert, the administratrix of the estate of Marguerite Hicks. We grant the petition.
 I.
On September 17, 2000, Marguerite Hicks, a patient at DMHMR's Emmett Poundstone Mental Health Facility, died. Hicks was allegedly strangled in her room at the facility. Two nurses and a mental health worker employed by the facility were arrested and charged with violating the Adult Protective Services Act, Ala. Code 1975, § 38-9-1 et seq., for failing to conduct a bed check every 15 minutes and for failing to administer medication to Hicks. The employees were also charged with falsifying medical records. As a result of Hicks's death, Lambert sued DMHMR; Kathy Sawyer, the commissioner of DMHMR; and Phillip Boyd.[1]
Lambert filed numerous interrogatories, requests for admission, and requests for production, including a request that DMHMR produce the investigation report produced by the bureau of special investigations ("BSI"), the investigative division of DMHMR, relating to Hicks's death. DMHMR objected to the production of the BSI investigation report, arguing that under § 12-21-3.1, Ala. Code 1975, the report was not discoverable, except upon proof that Lambert was unable, without undue hardship, to obtain the substantial equivalent of the information in the report by other means.
On January 22, 2002, Lambert filed a motion to compel the production of the BSI report. The trial court did not conduct a hearing on the matter and did not review the contents of the report in camera; however, on January 23, 2002, the trial court granted Lambert's motion to compel production of the report. On February 5, 2002, DMHMR filed a motion to reconsider the court's order; with the motion DMHMR submitted the affidavits of Richard E. Von Koerner and Michael Wilkerson, investigative officers with BSI, and the table of contents of the BSI report. Von Koerner's affidavit stated, in substance, that BSI investigators are police officers and that BSI reports and files are confidential documents that are not released except upon approval of the bureau of legal services of DMHMR. The affidavit of Michael Wilkerson, in substance, stated that Wilkerson was assigned to investigate the death of Hicks, identified the witnesses Wilkerson had interviewed, and stated that those witnesses were all persons who should be available to testify at trial. The affidavits both stated that the BSI report had been given to the district attorney for Baldwin County. On February 11, 2002, the trial court denied DMHMR's motion to reconsider. On February 28, 2002, DMHMR filed this petition for a writ of mandamus directing the trial court to vacate its order. We grant the petition.
 II.
Recently, this Court was confronted with the exact issue in this case: whether *Page 866 
the provisions of § 12-21-3.1, Ala. Code 1975, apply to the investigative reports prepared by investigators employed by DMHMR. See Exparte Dep't of Mental Health Mental Retardation,819 So.2d 591 (Ala. 2001). However, Lambert's contention to the contrary notwithstanding, this Court did not in that case reach the issue of the applicability of § 12-21-3.1 to DMHMR investigations. The trial court in Ex parte Alabama Department of Mental Health had conducted an in camera inspection of the BSI investigation report; however, the report was not included in the materials before this Court. As a result, DMHMR could not show that the trial court had abused its discretion in ordering that the BSI investigation report be produced. We therefore denied the petition without reaching the issue whether § 12-21-3.1 is applicable to BSI reports. See Ex parte Dep't of Mental Health, supra. Today we must answer the question.
Section 12-21-3.1, Ala. Code 1975, entitled "Subpoena of law enforcement officers and investigative reports; disposition of criminal matters," provides:
 "(a) Neither law enforcement investigative reports nor the testimony of a law enforcement officer may be subject to a civil or administrative subpoena except as provided in subsection (c).
 "(b) Law enforcement investigative reports and related investigative material are not public records. Law enforcement investigative reports, records, field notes, witness statements, and other investigative writings or recordings are privileged communications protected from disclosure.
 "(c) Under no circumstances may a party to a civil or administrative proceeding discover material which is not authorized discoverable by a defendant in a criminal matter. Noncriminal parties may upon proper motion and order from a court of record: Secure photographs, documents and tangible evidence for examination and copying only by order of a court imposing such conditions and qualifications as may be necessary to protect a chain of custody of evidence; or protect the prosecutors', law enforcement officers', or investigators' work product; or to prevent the loss or destruction of documents, objects, or evidence. Such discovery order may be issued by a court of record upon proof by substantial evidence, that the moving party will suffer undue hardship and that the records, photographs or witnesses are unavailable from other reasonable sources.
 "(d) Discovery orders prior to the disposition of the criminal matter under investigation are not favored and should be granted only upon showing that the party seeking discovery has substantial need of the materials and is unable, without undue hardship, to obtain the substantial equivalent by other means.
 "(e) Nothing in this section shall preclude the disclosure of investigative reports, including the testimony of law enforcement officers, to a state administrative agency authorized by law to investigate or conduct administrative contested case hearings in any matter related to the suspension, revocation, or restriction of a professional license or registration for the protection of the public health and safety.
 "(f) For purposes of this section, a criminal matter is disposed of in any of the following ways:
 "(1) When the prosecuting authority has presented the matter to a grand jury and a no bill or true bill has been returned.
 "(2) After a written statement by the chief law enforcement officer of *Page 867 
the agency conducting the investigation that the matter under investigation is closed.
 "(3) When the entity or individual under investigation has been tried and final judgment entered."
DMHMR contends that BSI investigation reports are entitled to the protection afforded by § 12-21-3.1 because, DMHMR argues, §22-50-21, Ala. Code 1975, authorizes DMHMR to employ police officers to investigate criminal activity on the property of state mental health facilities or hospitals, and the BSI investigators making the report in this case are employed in that capacity. Section 22-50-21, Ala. Code 1975, provides:
 "The State Mental Health Officer may appoint or employ one or more suitable persons to act as police officers to arrest intruders, trespassers and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals. Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings or lands or arrest them and may, without warrant, arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant. Such police officer shall have authority to summon a posse comitatus."
In determining whether BSI investigation reports are protected under § 12-21-3.1, this Court must apply the fundamental rules of statutory construction:
 "`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"
Ex parte Master Boat Builders, Inc., 779 So.2d 192, 196 (Ala. 2000) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346
(Ala. 1992)); see also Simcala, Inc. v. American Coal Trade, Inc.,821 So.2d 197 (Ala. 2001).
By its plain language, § 12-21-3.1 is applicable to "law enforcement investigative reports." Rule 1.4(p), Ala.R.Crim.P., defines a "law enforcement officer" as
 "an officer, employee or agent of the State of Alabama or any political subdivision thereof who is required by law to:
"(i) Maintain public order;
 "(ii) Make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses; and
 "(iii) Investigate the commission or suspected commission of offenses."
BSI investigators are employees of the State of Alabama. As DMHMR's investigative arm, BSI is charged with investigating incidents of criminal activity at state mental health facilities or hospitals. Section22-50-21 authorizes DMHMR's investigators to act as "police officers" in arresting intruders, trespassers, and persons guilty of improper or disorderly conduct *Page 868 
on the property of state mental health facilities or hospitals. Section22-50-21 charges the DMHMR investigators with all of the duties of police officers and vests them with all of the powers of police officers.
We must presume that when the Legislature enacted § 12-21-3.1, it was well aware of the scope of § 22-50-21. See Blue Cross BlueShield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala. 1998) ("It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law."). Thus, based upon the broad powers granted BSI investigators by § 22-50-21, we hold that BSI investigative reports are "law enforcement investigative reports" within the meaning of §12-21-3.1, and are therefore entitled to protection from civil subpoena, except upon a showing that the information contained in the report cannot be obtained from other sources without undue hardship.
This Court set forth the applicable standard of review regarding a petition for writ of mandamus relating to a discovery order in Ex parteClarke, 582 So.2d 1064, 1067 (Ala. 1991):
 "Because discovery involves a considerable amount of discretion on the part of the trial judge, the standard this Court will apply in reviewing his actions on a petition for a writ of mandamus is whether there has been a clear showing that the trial court abused its discretion. Thus, a writ of mandamus directing the trial judge to set aside his ruling on a discovery matter will issue only where it is clear that the trial judge has abused his discretion."
582 So.2d at 1067; see also Ex parte Dep't of Mental Health, supra.
Lambert argues that even if § 12-21-3.1 is applicable to BSI investigation reports, the trial court did not abuse its discretion because, Lambert argues, she is otherwise unable to obtain the information contained in the report. Lambert states in her brief to this Court that she is unable to obtain this information because, she argues, 1) the statements contained in the BSI report were taken shortly after Hicks's death and the memory of the witnesses is probably not as accurate now as it was then; 2) employees who might have been involved in Hicks's death would likely be more forthcoming to BSI investigators than to Lambert out of fear of possible legal culpability; 3) the three employees charged in relation to Hicks's death with violating the Adult Protective Services Act have invoked their Fifth Amendment right to not testify; and 4) the BSI report contained statements from five patients of the Emmett Poundstone Mental Health Facility to whom Lambert contends she clearly has no access. However, Lambert made no showing in the trial court of undue hardship. She merely alleged, "Further, the Plaintiff will suffer undue hardship if she does not receive the reports because the information in the reports is unavailable from other reasonable sources."
A showing of undue hardship requires more than a mere conclusory statement by the party seeking the information that he or she could not obtain the equivalent of the information in the reports sought by discovery without undue hardship. Before the trial court could grant Lambert's motion to compel the production of the BSI investigation report, Lambert was required to show that she had at least tried to interview or depose the witnesses interviewed by BSI investigators. Furthermore, before the trial court granted Lambert's motion to compel production of the BSI report, the trial court should have conducted an incamera inspection of that report to determine whether the *Page 869 
statements contained in the report are relevant and whether the information is such that it cannot be obtained from another source without undue hardship. See Ex parte May, 393 So.2d 1006, 1007 (Ala. 1981) (holding that if tangible material is sought in discovery, incamera examination of the material may be required). The trial court is the appropriate forum for testing the validity of the justifications Lambert now argues for the first time on appeal.
We note that we are not concluding that DMHMR cannot be compelled to produce the BSI report. Lambert may find, after attempting to interview or depose the witnesses whose statements are contained in the BSI report, that she cannot obtain the substantial equivalent of the information contained in the report without undue hardship. If that is the case, Lambert may then return to the trial court and, upon a showing that the information cannot be obtained without undue hardship, the court may compel DMHMR to produce the BSI report. Undue hardship might include, among other things, the unavailability of a witness whose statement cannot be obtained from another source; the lack of access to patients who had given statements to the BSI investigators or the impossibility of obtaining the equivalent of those statements from patients because of a patient's physical or mental deterioration; the refusal of patients or hospital staff to make a statement to Lambert for fear of reprisal by the hospital; or the refusal of patients or staff members or even former staff members to speak to Lambert out of fear of self-incrimination.
Without access to the type of legislative history that accompanies acts of Congress, we cannot speculate whether the Legislature intended for § 12-21-3.1 to apply only to state and local police departments as opposed to police units operating within state agencies such as DMHMR. Our decision that § 12-21-3.1 applies to officers employed by BSI is based upon the broad language of § 22-50-21. Concerns about the overbreadth of the application of § 12-21-3.1 are properly addressed to the Legislature.
We conclude that the trial court abused its discretion in ordering that DMHMR produce the BSI report before Lambert made a showing that she could not, without undue hardship, obtain the substantial equivalent of the information in the report. DMHMR is entitled to the relief it seeks; therefore, we grant the petition and issue the writ of mandamus.
PETITION GRANTED; WRIT ISSUED.
MOORE, C.J., and HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Neither the petition for the writ of mandamus nor the answer to the petition includes a copy of Lambert's complaint. Therefore, we have no indication as to the allegations in the complaint. We also have no indication as to who Phillip Boyd is and why he was named a defendant.