BOLIN, Justice.
 

 Richard F. Allen, in his individual capacity and in his official capacity as commissioner (hereinafter referred to as “the commissioner”) of the Alabama Department of Corrections (“DOC”), appeals from a summary judgment ordering the commissioner to release certain reports regarding prison incidents to the Southern Center for Human Rights (hereinafter “SCHR”) and Mary Barksdale. We affirm.
 

 Facts and Procedural History
 

 On October 30, 2006, SCHR sent a written request to DOC, seeking incident reports regarding assaults and murders of several inmates at Donaldson Correctional Facility. The request was pursuant to the Alabama Open Records Act, §§ 36-12-40 and -41, Ala.Code 1975. On November 14, 2006, SCHR again requested the reports from DOC. On November 17, 2006, SCHR requested the same reports and also sought reports on the assault of another inmate. On January 4, 2007, DOC responded to SCHR’s requests. DOC stated that the information requested was part of an inmate’s file and that inmates’ files were not considered public records. In support of its contention that the records did not come under the purview of the Open Records Act, DOC cited
 
 Tarlton v. United States,
 
 430 F.2d 1351 (5th Cir. 1970), and an opinion of the Alabama Attorney General (Op. Att’y Gen. No. 1979-328).
 

 On March 15, 2007, SCHR sent a letter to the commissioner expressing concerns about the conditions at Donaldson Correctional Facility and relating 50 reports it had received from inmates regarding assaults and other crimes at the facility. SCHR also stated that blocking access to the reports, which it said involved a significant public-health crisis at the facility, might lead to litigation. On April 27, 2007, SCHR met with the commissioner. DOC provided SCHR with a summary of certain incidents from the facility but did not provide the records.
 

 On August 6, 2007, 32-year-old Farron Barksdale, who suffered from schizophrenia, was sentenced to life imprisonment without the possibility of parole for the murder of two police officers. On August 8, 2007, Barksdale was transported to Kil-by Correctional Facility. Several days later, Barksdale was found in his cell comatose. On August 21, 2007, Barksdale died. According to the record, the cause and circumstances surrounding Barksdale’s death were unknown, and DOC employees had made comments to members of the media speculating on the cause of Barks-dale’s death.
 

 On August 31, 2007, Mary Barksdale, Farron’s mother, on behalf of her son, requested the incident report and other documents from the commissioner regarding Farron’s death. On September 7, 2007, the commissioner denied the request, stating that the documents were part of the inmate’s file and that there was an attorney general’s opinion providing that unless there is a court order, no persons or agencies “other than criminal justice types” should receive information from an inmate’s file.
 

 
 *1267
 
 On September 20, 2007, SCHR, representing six inmates from Donaldson Correctional Facility, along with Mary Barks-dale (the inmates and Barksdale’s mother are hereinafter referred to as “the inmates”), sued the commissioner, alleging that he was in violation of the Open Records Act for failure to comply with their request for certain documents. Specifically, the inmates asked for disclosure of all public records, including prison-incident reports regarding Farron Barksdale’s death, an assault on inmate Michael Castillo at St. Clair Correctional Facility, and several stabbings, beatings, and deaths at Donaldson Correctional Facility, which were addressed in the complaint. On October 1, 2007, the inmates filed a motion for an injunction, compelling the commissioner to comply with their requests. In the motion, the inmates also sought certain investigative reports they were unable to obtain from any other source as provided for in § 12-21-3.1(c), Ala.Code 1975. On October 24, 2007, the commissioner filed a motion to dismiss, claiming State immunity, State-agent immunity, and discretionary-function immunity. He also argued the inmates failed to state a claim upon which relief could be granted. On October 31, 2007, the attorney general filed an amicus curiae brief in support of the commissioner’s motion to dismiss. On November 7, 2007, the Alabama District Attorneys Association also filed an amicus curiae brief in support of the commissioner.
 

 On November 9, 2007, the inmates filed a motion in opposition to the commissioner’s motion to dismiss. The trial court held a hearing, and on January 18, 2008, the trial court denied the commissioner’s motion to dismiss.
 

 On March 7, 2008, the commissioner filed his answer to the complaint. On April 18, 2008,
 
 The Huntsville Times
 
 newspaper filed an amicus curiae brief in support of the inmates. On July 31, 2008, the commissioner moved for a summary judgment. On September 15, 2008, the inmates filed a response to the commissioner’s motion and a cross-motion for a summary judgment. In their summary-judgment motion, the inmates stated that the commissioner may, on a case-by-case basis, redact information from a document or withhold a document if the commissioner can show that release of the information would cause a specific threat to public safety. Both parties presented depositions and other materials in support of their respective summary-judgment motions.
 

 On October 7, 2008, the trial court denied the commissioner’s motion for a summary judgment and granted the inmates’ summary-judgment motion. The trial court stated: “[T]he records requested are ordered produced subject to [the commissioner’s] retaining the right to redact sensitive information on a case by case basis if the [commissioner] reasonably believes the release of information will subject a person to specific threat or harm, or if the release will jeopardize a pending criminal investigation or the release will violate any state or federal law.” The commissioner appeals.
 

 Standard of Revieiv
 

 The standard of review for a ruling on a motion for a summary judgment is well settled:
 

 “ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that
 
 *1268
 
 burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala. 1989).’
 

 “... Questions of law are reviewed de novo.”
 

 Pritchett v. ICN Med. Alliance, Inc.,
 
 938 So.2d 933, 935 (Ala.2006) (quoting
 
 Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,
 
 639 So.2d 1349, 1350 (Ala.1994)).
 

 Analysis
 

 Section 36-12 — 40, Ala.Code 1975, a part of the Open Records Act, provides:
 

 “Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute. Provided however, registration and circulation records and information concerning the use of the public, public school or college and university libraries of this state shall be exempted from this section. Provided further, any parent of a minor child shall have the right to inspect the registration and circulation records of any school or public library that pertain to his or her child. Notwithstanding the foregoing, records concerning security plans, procedures, assessments, measures, or systems, and any other records relating to, or having an impact upon, the security or safety of persons, structures, facilities, or other infrastructures, including without limitation information concerning critical infrastructure (as defined at 42 U.S.C. § 5195c(e) as amended) and critical energy infrastructure information (as defined at 18 C.F.R. § 388.113(c)(1) as amended) the public disclosure of which could reasonably be expected to be detrimental to the public safety or welfare, and records the disclosure of which would otherwise be detrimental to the best interests of the public shall be exempted from this section. Any public officer who receives a request for records that may appear to relate to critical infrastructure or critical energy infrastructure information, shall notify the owner of such infrastructure in writing of the request and provide the owner an opportunity to comment on the request and on the threats to public safety or welfare that could reasonably be expected from public disclosure on the records.”
 

 Section 36-12-41, Ala.Code 1975, a part of the Open Records Act, states: “Every officer having the custody of a public writing which a citizen has a right to inspect is bound to give him, on demand, a certified copy of it, on payment of the legal fees thereof, and such copy is admissible as evidence in like cases and with like effect as the original writing.”
 

 The Open Records Act does not define the term “public writing.” However, in
 
 Stone v. Consolidated Publishing Co.,
 
 404 So.2d 678, 681 (Ala.1981), this Court stated with regard to the Open Records Act that a “public writing is such a record as is
 
 reasonably necessary
 
 to record the business and activities required to be done or carried on by a public officer so that the status of such business and activities can be known by [the] citizens.”
 

 
 *1269
 
 The legislature in § 41-13-1, in creating a State Records Commission, defined the term “public
 
 records
 
 ”:
 

 “As used in this article, the term ‘public records’ shall include all written, typed or printed books, papers, letters, documents and maps made or received in pursuance of law by the public officers of the state, counties, municipalities and other subdivisions of government in the transactions of public business and shall also include any record authorized to be made by any law of this state belonging or pertaining to any court of record or any other public record authorized by law or any paper, pleading, exhibit or other writing filed with, in or by any such court, office or officer.”
 

 Although § 41-13-1 is included in title 41, which regulates the retention and disposal of public records, “we doubt the Legislature intended to make a distinction between a ‘public writing’ and a ‘public record.’ ”
 
 Stone v. Consolidated Publishing, supra,
 
 404 So.2d at 680. However, this Court has used the definition in
 
 Stone.
 
 See
 
 Ex parte Gill,
 
 841 So.2d 1231, 1233-34 (Ala.2002);
 
 Birmingham News Co. v. Muse,
 
 638 So.2d 853, 854 (Ala.1994); and
 
 Chambers v. Birmingham News Co.,
 
 552 So.2d 854, 856 (Ala.1989).
 

 In
 
 Stone,
 
 this Court stated: “Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the business of the government carried on efficiently and without undue interference.” 404 So.2d at 681. In
 
 Stone,
 
 we also stated that some records kept by public officials may not be within the purview of § 36-12-40, including: “[1] [r]eeorded information received by a public officer in confidence, [2] sensitive personnel records, [3] pending criminal investigations, and [4] records the disclosure of which would be detrimental to the best interests of the public.”
 
 Id.
 
 “It is clear from the wording of § 36-12-40 that the legislature intended that the statute be liberally construed.”
 
 Chambers,
 
 552 So.2d at 856.
 

 In
 
 Ex parte Perch,
 
 17 So.3d 649 (Ala. 2009), this Court held, with regard to an inmate’s request for certain public writings:
 

 “Section 36-12-40 is referred to as the Open Records Act (‘the Act’). The Act ‘is remedial and should therefore be liberally construed in favor of the public.’
 
 Water Works & Sewer Bd. of Talladega v. Consolidated Publ’g, Inc.,
 
 892 So.2d 859, 862 (Ala.2004). The Act provides, in relevant part, that ‘[e]very citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute.’
 
 ‘No statute denies this right to inmates or felons.’ Ex parte Gill,
 
 841 So.2d 1231, 1233 (Ala.2002). The term ‘public writing,’ as the Court of Criminal Appeals recently acknowledged, ‘has been interpreted to include judicial records.’
 
 State v. Martin,
 
 4 So.3d 1196, 1201 (Ala.Crim.App.2008)(holding that trial exhibits are public records and that, therefore, a requester ‘was not required to establish good cause before he was entitled to inspect the trial exhibits’).”
 

 (Emphasis added.)
 

 In the present case, the inmates are seeking copies of records documenting incidents occurring inside the prison system. According to the deposition of Paul Yar-brough, director of the intelligence and investigations division (hereinafter “the I & I division”) of DOC, corrections officers generally write incident reports that document anything that happens in a correctional facility. Incident reports may be written as a result of inmates gambling, a fistfight, an inmate failing a urine test, or a search of an inmate. More serious inci
 
 *1270
 
 dents, such as an inmate’s death, may be forwarded to the I & I division. The investigation by the I & I division results in a report. Yarbrough testified that investigations by the I & I division are usually completed within 30 days of the day they are received. He stated that the I & I division investigated Farron Barksdale’s death and that the investigation was still pending and had been pending for nine months at the time of the deposition. Yar-brough had been instructed by his counsel not to testify as to whether a report had been generated in the investigation of Barksdale’s death. We note that there was evidence in the record indicating that certain serious assaults, such as stabbings involving inmates, were not investigated by the I & I division and that in those cases only an incident report was generated.
 

 The commissioner testified that no incident reports generated by employees of DOC are made available to the public. When asked if there was a “blanket” policy prohibiting the disclosure of incident reports under the Open Records Act, he responded that it was DOC’s policy not to release any incident reports.
 

 We note that § 14-3-9(a), Ala.Code 1975, provides that corrections officers have a duty to report to the I & I division all violations of the law relating to prisons that may come to their attention. Section 14-3-9 further provides that, where applicable, the I & I division shall refer such violations to the appropriate district attorney.
 

 The commissioner argues that § 12 — 21—3.1(b), Ala.Code 1975, provides a statutory exemption for
 
 all
 
 incident reports generated inside a prison:
 

 “Law enforcement investigative reports and related investigative material are not public records. Law enforcement investigative reports, records, field notes, witness statements, and other investigative writings or recordings are privileged communications protected from disclosure.”
 

 “[T]he party refusing disclosure shall have the burden of proving that the writings or records sought are within an exception and warrant nondisclosure of them.”
 
 Chambers,
 
 552 So.2d at 856-57.
 

 We are mindful that this Court in
 
 Stone
 
 recognized a pending criminal investigation as an exception to the Open Records Act, and that in 1998 the legislature adopted § 12-21-3.1 as a statutory exemption.
 
 [1]
 
 We note that there are numerous specific statutes exempting from public inspection certain records, including, but not limited to, juvenile and youthful-offender records, identity of Medicaid recipients, records of a banking board, hospital records produced by subpoena, probation re
 
 *1271
 
 ports (unless ordered released by a court), reports of certain diseases, and tax returns and financial statements. See, respectively, § 12-15-101 et seq., Ala.Code 1975; § 22-6-9, Ala.Code 1975; § 5-3A-11, Ala. Code 1975; § 12-21-6, Ala.Code 1975; § 15-22-53(b), Ala.Code 1975; § 22-11A-2, -14 and -22, Ala.Code 1975; and § 40-2A-10, Ala.Code 1975. However, we disagree with the commissioner that all incident reports generated by DOC employees are exempt from the Open Records Act under § 12-21-3.1(b).
 

 This Court made clear that in relation to the Open Records Act, the judicially created exceptions set out in
 
 Stone, supra,
 
 must be narrowly construed. See
 
 Ex parte Department of Transp.,
 
 757 So.2d 371, 374 (Ala.1999) (“The right of the public to inspect and copy a ‘public writing
 
 [1]
 
 is broad and the exceptions thereto are narrow and limited.”);
 
 Chambers v. Birmingham News,
 
 552 So.2d at 856 (holding that the exemptions set forth in
 
 Stone
 
 should be strictly construed). Although § 12-21-3.1 is a statutory exemption, it is nonetheless an exception to the Open Records Act and thus should also be narrowly construed. This conclusion is in keeping with the broad general policy of open government. The document reflecting the work of government belongs to the public, and, although exceptions to disclosure of such documents are necessary, any exceptions should be narrowly construed. In other words, the Open Records Act favors disclosure, and exemptions to that Act, including those created by statute, must be narrowly construed.
 

 Section 12-21-3.1 (b) clearly exempts law-enforcement investigative reports and related material from public disclosure. In this case, the incident reports, which identify occurrences within a prison, must be compared to an investigative report prepared by the I & I division. An incident report documents any incident— from the mundane to the serious — whereas an investigative report by the I & I division reflects a close examination of an incident and a systematic inquiry and may lead to criminal prosecution. The commissioner’s refusal to release incident reports to the general public is not protected by § 12-21-3.1(b). In contrast to an incident report, an investigative report produced by the I & I division would be protected by § 12 — 21—3.1(b), as the inmates concede. Even the legislature, in requiring under § 14-3-9 that certain crimes be reported to the I & I division and that the I & I division could then determine if the violation should be referred to a district attorney, did not consider all incident reports as synonymous with investigative reports.
 

 In addition to certain incident reports, the inmates also seek certain investigative reports, and the trial court ordered that the requested records be produced. The inmates argue that although some investigative reports are protected from disclosure under § 12 — 21—3.1(b), the inmates are entitled, under § 12-21-3.1(c), Ala.Code 1975, to the investigative reports they have requested.
 

 Section 12 — 21—3.1(c) provides:
 

 “(c) Under no circumstance may a party to a civil or administrative proceeding discover material which is not authorized discoverable by a defendant in a criminal matter. Noncriminal parties may upon proper motion and order from a court of record: Secure photographs, documents and tangible evidence for examination and copying only by order of a court imposing such conditions and qualifications as may be necessary to protect a chain of custody of evidence; or protect the prosecutors’, law enforcement officers’, or investigators’ work product; or to prevent the loss or destruction of documents, ob
 
 *1272
 
 jects, or evidence. Such discovery order may be issued by a court of record upon proof by substantial evidence, that the moving party will suffer undue hardship and that the records, photographs or witnesses are unavailable from other reasonable sources.”
 

 The inmates argue that the investigative reports of the I & I division are completely unavailable to them without a subpoena and that the information contained in the investigative reports are unavailable by any other means because inmate victims are often unable to provide critical information including the dates, names of witnesses, names of perpetrators, and the punishment taken against the perpetrators. They argue that several witnesses to the incidents in the complaint as to which the inmates seek reports are unknown and unknowable except through the investigative reports. The inmates argue that they have limited access to information within the prison by any other means and that prison personnel are unlikely to make statements for fear of reprisal or potential legal liability.
 

 This Court has addressed § 12-21-3.1(c) as it concerns a request by a party in a civil proceeding for an investigative report. In
 
 Ex parte Alabama Department of Mental Health & Mental Retardation,
 
 840 So.2d 868 (Ala.2002), the issue presented was whether a report prepared by internal investigators employed by the Department of Mental Health and Mental Retardation was afforded protection under § 12-21-3.1. A patient at a state-run mental-health facility was strangled in her room. One of the employees, who was terminated for failing to conduct a bed check and for falsifying medical records relating to the patient’s death, sued the Department and its commissioner. The employee requested reports completed by the Department’s investigative division. The Department argued that the investigative report was not discoverable unless the employee showed that she was unable, without undue hardship, to obtain the substantial equivalent of the information contained in the reports by other means. This Court noted that the Department’s internal investigators were charged with all the powers of police officers and were, therefore, entitled to protection from civil subpoena, except upon a showing that the information contained in the reports could not be obtained from other sources without undue hardship. The employee argued that she had shown undue hardship. However, the employee made only conclusory statements and failed to show undue hardship. This Court noted that the trial court should have conducted an in camera inspection of the reports to determine whether the statements contained in the reports were relevant and whether the information was such that it could not be obtained from another source without undue hardship. We further stated:
 

 “Undue hardship might include, among other things, the unavailability of a witness whose statement cannot be obtained from another source; the lack of access to patients who had given statements to the BSI investigators or the impossibility of obtaining the equivalent of those statements from patients because of a patient’s physical or mental deterioration; the refusal of patients or hospital staff to make a statement to [the employee] for fear of reprisal by the hospital; or the refusal of patients or staff members or even former staff members to speak to [the employee] out of fear of self-incrimination.”
 

 840 So.2d at 869.
 

 Rather then respond to the inmates’ argument regarding undue hardship under § 12-21-3.1(c), the commissioner argues that disclosure of all incident
 
 *1273
 
 reports and all investigative reports is barred by § 12-21-3.1(b). Failure to argue an issue waives that issue and precludes its consideration on appeal.
 
 Boshell v. Keith,
 
 418 So.2d 89 (Ala.1982).
 

 Next, the commissioner argues that the plain language of § 36-12-40 provides an exception for “records concerning security plans, procedures, assessments, measures, or systems, and any other records relating to, or having an impact upon, the security or safety of persons, structures, facilities, or other infrastructures, including without limitation information concerning critical infrastructures ... and critical energy infrastructure information....” Specifically, the commissioner argues that disclosure of the information in the incident reports would lead to potential disturbances in prisons and could lead to inmates seeking retaliation against other inmates, which, he says, would compromise security in the prison system. This exception, added by the legislature in 2004, clearly refers to records regarding public infrastructure and limits public disclosure of sensitive information affecting public safety and national security. This prohibition against disclosure, narrowly construed, does not encompass the concerns raised by the commissioner. We note that had the inmates been seeking copies of the security system or the security procedures for a prison, this exemption would have applied. Moreover, the commissioner testified:
 

 “Q. Okay. In your responses to [the inmates’] interrogatories you state that, ‘There are incidents where inmates and employees have been threatened due to incident reports being written or investigations being conducted.’ Tell me about one such incident.
 

 “A. That’s just been told to me. I don’t — I can’t give you an incident.
 

 “Q. Okay. So you’re not aware — you are not aware of any such incident; is that correct?
 

 “A. Not personally, no.
 

 “Q. Who — who told you that?
 

 “A. General counsel.
 

 “Q. Okay. So your lawyers — and did they tell you about the specific incident or did they tell you that there were incidents that occurred?
 

 “A. They just told me it happens from time to time.”
 

 The commissioner, as the party refusing to disclose the requested records, had the burden of proving that the records sought are within an exception and warrant nondisclosure. His testimony does not support his contention that disclosure of the records impacts prison security. Moreover, the trial court’s order allows the commissioner to redact information that would subject a person to specific threat or harm or if the release of the information •will jeopardize a pending criminal investigation or violate any state or federal law.
 

 Last, the commissioner argues that investigations would be compromised if all incident reports are subject to the Open Records Act because:
 

 “[t]here would also be a chilling effect on the investigative process by the correctional officers and the I & I division if they believed every incident report would be subject to public access under the Open Records Act. The investigative process would possibly not be as accurate or extensive as it is presently. Officers would not pursue leads with vigor as they do now. Aso, officers would be less likely to fully and completely report an incident or the security measures they took to remedy an incident or breach in security. This would impact how a supervisor monitors the trends within his/her institution.”
 

 
 *1274
 
 (Commissioner’s brief, pp. 26-27.) Suffice it to say, we find it hard to believe that a corrections officer would neglect his or her job because the public would have access to certain records reflecting actions of the officer as a government employee.
 

 Conclusion
 

 Citizens are entitled to information regarding the affairs of their government. Alabama’s Open Records Act first appeared in the 1923 Code of Alabama and represents a long history of openness. The Open Records Act is remedial and should therefore be construed in favor of the public. The statutory and judicially created exceptions generally protect an individual’s privacy, the integrity of a criminal investigation, public safety and security, or privileged information. The exceptions to the Open Records Act should be strictly construed, because the purpose of the Open Records Act is to permit the examination of public writings and records. The trial court’s order permitting redaction by the commissioner of any sensitive information in the requested records safeguards any interest the commissioner has in protecting inmates or DOC employees from a specific threat or harm. Accordingly, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, STUART, and MURDOCK, JJ., concur.
 

 [1]
 

 . In
 
 Water Works & Sewer Board of Talladega v. Consolidated Publishing, Inc.,
 
 892 So.2d 859 (Ala.2004), Consolidated Publishing sued the Water Works Board of the City of Tallade-ga and the custodian of its records to obtain certain records pursuant to the Open Records Act. The Board argued that because it was a public corporation, it was not subject to the Act. The trial court held that the Board was subject to the Act but that some of the records sought were excluded from Act because those records involved pending criminal investigations. Both parties appealed. This Court held that the Board was subject to the Act because it performed a municipal function and that the employees of the Board were subject to the Act. We went on to address whether certain records were properly excluded. This Court stated that it was unclear what records the trial court exempted from disclosure under the
 
 Stone
 
 pending-criminal-investigation exemption; however, the records exempted appeared to include documents not covered by § 12-21-3.1(b). We remanded the cause for the trial court to consider whether those documents were included in the documents exempted under § 12-21-3.1.