Sallie Whited, the executrix of the estate of Glenn H. Holmes, deceased, appeals *Page 22 
from a judgment awarding Laura Jean Holmes, the widow of Glenn H. Holmes, an elective share of his estate pursuant to § 43-8-70(a)(2), Ala. Code 1975. We affirm in part, reverse in part, and remand.
Glenn H. Holmes and Laura Jean Holmes were married on August 9, 1980. They were divorced in the spring of 1991, but they remarried in October 1991. Glenn Holmes died on March 18, 1999, and on March 23, 1999, Whited, the decedent's daughter, filed his will in the probate court. On April 9, 1999, Whited was appointed the executrix of the decedent's estate. On April 27, 1999, Holmes filed a "Petition for Homestead Allowance," pursuant to § 43-8-110, Ala. Code 1975, and a "Petition for Exempt Property," pursuant to § 43-8-111, Ala. Code 1975. Both petitions were granted on June 10, 1999. At some point not specified in the record, Whited filed certain claims against the estate, including one for funeral expenses. As stated in her brief, she also petitioned the court "to include certain assets belonging to the decedent's wife [Holmes] in the estate of the deceased." On October 20, 1999, Whited had the action removed to the circuit court. On August 17, 2000, a hearing was held on Whited's claims. After receiveing ore tenus evidence, the circuit court issued an order on November 13, 2000. In pertinent part, the circuit court's order stated:
 "Glenn H. Holmes and Laura Jean Holmes resided in a marital home located on the following described property. [No property description appears in the order.]
 "In November of 1980 Laura Jean Holmes was the grantee of a conveyance of other property from the heirs at law of Willie E. Ashworth, the father of Laura Jean Holmes. However, a life estate was reserved in Ollie Bell Ashworth, the mother of Laura Jean Holmes, reserving to Ms. Ashworth the use and enjoyment of the premises conveyed as long as she lived. Mrs. Ollie Bell Ashworth is still living as of this date, thus giving Laura Jean Holmes a remainder interest only in said property at this time.
 "At the time of the conveyance, a mortgage was given with Laura Jean Holmes and husband, Glenn H. Holmes as mortgagor, and Ollie Bell Ashworth as mortgagee.
 "Although titled in the name of Laura Jean Holmes with the use and enjoyment reserved in Ollie Bell Ashworth during her life, the Holmeses used the property jointly during their marriage for hay for the cattle. The heirs of Glenn H. Holmes seek, in some way, to have this property included in his estate. The Court knows of no law authorizing the transfer of property titled in a surviving spouse, to the estate of the deceased spouse, solely because the property was used jointly during the marriage. No citation to law authorizing such has been furnished to the Court by either counsel.
 "The Court finds the value of the interest in real property of Glenn Holmes in the homeplace of the parties to be $100,000.00
"Personal Property
 "The Court finds that the following is a list of personal property owned by Mr. Glenn Holmes at the time of his death:
 "Cattle(subsequently sold) $6,800.00 1995 Ford automobile 7,000.00 1983 Ford LTD 500.00 1976 Ford Pickup 800.00 1972 Volkswagen 250.00 Farm Tractor and Equipment 3,000.00 Farm Picture 350.00 Pistol 150.00 Cemetery Lots 250.00 Fireproof Safe 50.00 Wood-burning Insert 900.00 Satellite Dish 400.00 "Value of Personal Property $20,450.00 *Page 23 
"Order of the Court
 "Based upon the above and foregoing findings, it is therefore,
 "ORDERED, ADJUDGED and DECREED that the total value of the Estate of Glenn H. Holmes at the time of his death was $120,450.00.
 "It is further ORDERED, ADJUDGED and DECREED that Laura Jean Holmes is entitled, as widow, to the following sums from said estate:
 "(1) Pursuant to § 43-8-110 Code of Alabama a Homestead Allowance in the amount of $6,000.00.
 "(2) Pursuant to § 43-8-111 Code of Alabama, an Exempt Property Allowance of $3,500.00.
 "(3) Pursuant to § 43-8-111 Code of Alabama, 1/3 of the net value of the estate (after the deduction of the Homestead Allowance and Exempt Property), said Elective Share being the amount of $36,983.33.
 "It is further ORDERED, ADJUDGED, and DECREED that the sum of $7,000.00 be deducted from the Elective Share determined herein, as the value owed by the widow for the 1995 Ford Automobile purchased from the estate.
 "It is further ORDERED, ADJUDGED, and DECREED that the sum of $39,483.33 shall be paid by the executrix, Sallie Ann Whited to the widow within 42 days of the date of this Order, unless appeal is taken and proper Supersedeas Bond posted."
Whited filed a notice of appeal in the Court of Civil Appeals on December 19, 2000. The Court of Civil Appeals transferred the case to this Court on March 6, 2001, because it lacked subject-matter jurisdiction. Whited's brief presents two general issues that question (1) the trial court's refusal to include certain real property in the estate and (2) the trial court's refusal to allow certain claims by Whited against the estate and to reduce the value of the estate by the value of items allegedly taken by Holmes. Based upon our review of the arguments presented, Whited actually presents four separate contentions on this appeal: (1) that the trial judge improperly excluded from the estate of the deceased real property owned by Holmes; (2) that the trial court erred in failing to deduct from the estate the funeral expenses before calculating Holmes's elective share; (3) that the trial court erred in failing to deduct certain items from the estate before calculating the elective share; and (4) that the trial court erred in failing to deduct certain sums from Holmes's elective share for items she received from the estate.
Whited's first argument is that the real property described by the trial court as that conveyed to Holmes by her father's heirs, subject to a life estate in her mother, should have been included in the decedent's estate because the property had been used jointly by Holmes and the decedent during their marriage. Whited contends that Beck v. Beck,564 So.2d 979 (Ala.Civ.App. 1990) (holding that once an asset has been commingled during a marriage, the asset loses its identity and can be considered joint property); Wilson v. Wilson, 404 So.2d 76 (Ala.Civ.App. 1981); and Alston v. Alston, 555 So.2d 1128 (Ala.Civ.App. 1989) (both holding that when property is used for the benefit of the family during marriage, it becomes subject to the trial court's jurisdiction) apply to make the property in question part of the estate.
Whited's reliance on these cases is misplaced. All three cases concern property divisions as a result of a divorce. They do not govern the distribution of property in an estate. The distribution of property in *Page 24 
a divorce proceeding, requiring consideration of the separate estate of the spouse requesting alimony or a division of property, is governed by §30-2-51(a), Ala. Code 1975.[1] See MacKenzie v. MacKenzie, 486 So.2d 1289
(Ala.Civ.App. 1986) (discussing the type of divorce case in which the judge must determine the separate estate of the spouse in order to calculate alimony and property division.) This Code section clearly does not apply to the distribution of property in a decedent's estate.
The deed conveying the property to Holmes contains the following language:
 "That in consideration of Ten and no/100 ($10.00) Dollars and other good and valuable consideration to the undersigned grantor (whether one or more), in hand paid by the grantee herein, the receipt whereof is acknowledged, I or we, Laura Jean Holmes husband, Glenn H. Holmes; Joyce Noles Husband, Wayne D. Noles; Royce Ashworth, a single man; Johnny C. Ashworth wife, Judy Ashworth; Ollie Bell Ashworth, a widow (herein referred to as grantor, whether one or more), grant, bargain, sell and convey unto Laura Jean Holmes (herein referred to as grantee, whether one or more), the following described real estate. . . .
". . . .
 "TO HAVE AND TO HOLD to the said grantee, his, her or their heirs and assigns forever, subject, however, to a life estate in the premises herein conveyed expressly reserved to Ollie Bell Ashworth for so long as she may live.
 "And we do for ourselves and for our heirs, executors, and administrators covenant with the said GRANTEES, their heirs and assigns, that we are lawfully seized in fee simple of said premises; that they are free from all encumbrances, unless otherwise noted above; that we have good right to sell and convey the same as aforesaid; that we will and our heirs, executors and administrators shall warrant and defend the same to the said GRANTEES, their heirs and assigns forever, against the lawful claims of all persons."
The deed conveys from the grantors, a group which includes the decedent, the grantors' entire interest in the property to Holmes's mother for life, with a remainder in Holmes. Any property interest the decedent may have had before this deed was clearly conveyed to Holmes and her mother, who continues to reside on the property. Therefore, after this conveyance the decedent had no interest in the property, and nothing in the record shows that he ever regained any interest in the property. Whited's arguments based on divorce jurisprudence cannot apply to change this result, and the trial court did not err in refusing to include the property in question in the decedent's estate.
Whited's second argument is that the amount she paid for funeral expenses, which she paid with funds from the estate, should have been deducted from the gross estate before any exemptions or exceptions were calculated. Holmes argues that Whited failed to make a claim for funeral expenses within the prescribed statutory *Page 25 
period. Section 43-2-350, Ala. Code 1975, governs the time and manner of filing claims against an estate:
 "(a) All claims against the estate of a decedent, held by the personal representative of the decedent or by an assignee or transferee of the personal representative, or in which the personal representative has an interest, whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however, that any creditor entitled to actual notice as prescribed in section 43-2-61 must be allowed thirty days after notice within which to present the claim, by filing the claims, or statement thereof, verified by affidavit, in the office of the judge of probate, in all respects as provided by section 43-2-352. All claims not so presented and filed are forever barred, and the payment or allowance thereof is prohibited. But this subsection shall not apply to claims of personal representatives to compensation for their services as such, nor to sums properly disbursed by them in the course of administration."
(Emphasis added.) Payment of funeral expenses by a personal representative are debts of a decedent and are properly chargeable against the decedent's estate. See § 43-2-371(1), Ala. Code 1975.See also Gilbreath v. Levi, 270 Ala. 413, 119 So.2d 210 (1959); Canadav. Canada, 243 Ala. 109, 8 So.2d 846 (1942); and Wommock v. Davis,228 Ala. 362, 153 So. 611 (1934).
The trial transcript contains the following exchange between Holmes's attorney and Whited concerning the proceeds of the estate property she sold:
"Q — Have you paid any of that money out to anybody?
"A — Yes.
"Q — Who have you paid it out to?
"A — I paid a funeral bill.
"Q — How much?
 "A — Around $5,200 — I have it here. I'm sorry, it was $5324.36 to Snead Funeral Home.
"Q — He had no burial insurance?
"A — He had a life [insurance] policy.
"Q — How much was that?
"A — $28,207.66
"Q — How much was the total cost of the funeral?
"A — $5324.35.[2]
 "Q — And you paid the difference out of the monies you got from the sale of the cattle and vehicles?
"A — Yes, sir."
The order of the trial court does not address the $5,324.36 payment made by Whited for funeral expenses. As noted, § 43-2-371(1) dictates that the funeral expenses are the first expenses that should be paid out of the estate prior to distribution, and § 43-2-350 states that the claims of an executor are not subject to the filing requirement of that section. Therefore, we conclude that the trial court should have deducted $5,324.36 from the estate, for funeral expenses, before calculating Holmes's elective share.
Whited's third argument is that the trial court erred in failing to reduce the decedent's estate by the amount of $4,000 for a mortgage she alleges the decedent paid off on the real property in which *Page 26 
Holmes's mother has a life estate and she has a remainder interest. However, Whited fails to cite any authority in support of this contention. Rule 28(a)(5), Ala.R.App.P., requires that arguments in briefs contain "citations to the authorities, statutes and parts of therecord relied on." (Emphasis added.) Failure to comply with the requirements of Rule 28(a)(5) requiring citation of authority for arguments provides the Court with a basis for disregarding those arguments:
 "When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research. Rule 28(a)(5); Spradlin v. Birmingham Airport Authority, 613 So.2d 347 (Ala. 1993)."
City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998). See also McLemore v. Fleming, 604 So.2d 353 (Ala. 1992); Stoverv. Alabama Farm Bureau Ins. Co., 467 So.2d 251 (Ala. 1985); and Ex parteRiley, 464 So.2d 92 (Ala. 1985). We also note that the record indicates that the evidence concerning the payment of the $4,000 mortgage was in dispute. The presumption of correctness afforded by the ore tenus rule[3]
is therefore applicable to this case. Thus, although the failure to cite authority provides a basis for not considering Whited's argument on this issue, we would also affirm the trial court because Whited has made no showing of palpable error.
Whited's fourth argument is that Holmes's elective share should be reduced by the value of certain items she received from the estate. Whited first claims that the proceeds of the sale of cattle listed in the trial court's order as part of the estate — $2,068.49 and $5,340.76[4] — should be subtracted from Holmes's elective share because, she says, Holmes has already received those proceeds. However, the record reflects that those cattle were sold before the decedent's death and the proceeds from the sale were deposited in a joint bank account maintained by Holmes and the decedent, subject to a right of survivorship. These funds were properly excluded from the estate as the separate property of Holmes, pursuant to § 5-5A-41, Ala. Code 1975 (governing joint accounts with the right of survivorship).[5] Whited also claims that the value of a bedroom suite, $2,500, a dining room suite, $2,500, and the value of a wood-burning fireplace insert, $900, should be deducted *Page 27 
from Holmes's elective share, because, she claims, Holmes is in possession of those items. The record contains sufficient evidence to show that those items were purchased by Holmes, that they are a part of her separate estate, and that they were properly excluded from the estate of the decedent.
Also, as with her third argument, Whited fails to cite authority for any of her claims presented as part of this fourth argument, in violation of Rule 28, Ala.R.App.P. Moreover, she challenges the trial court's findings, which are based on disputed evidence and therefore presumed correct. Nichols, supra. For these reasons also, we conclude that Whited's fourth argument is without merit.
The trial court's order is affirmed except as to its failure to deduct funeral expenses in the calculation of the elective share. Insofar as the judgment of the trail court made no deduction for the funeral expenses in calculating the value of the estate, the judgment must be reversed and the case remanded to the trial court to deduct the amount of the funeral expenses, $5,324.36, from the estate before it calculates Holmes's elective share.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] Section 30-2-51(a) reads as follows:
 "(a) If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."
[2] This one-cent difference is reflected in the trial transcript; the cost of the funeral was $5,324.36.
[3] "`When a trial court makes findings of fact
 based on evidence presented ore tenus, those findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust, and this rule is especially applicable in cases in which the trial court makes its findings of fact after hearing conflicting evidence: every presumption will be indulged in favor of the court's findings, and those findings will not be disturbed unless palpably wrong."
Nichols v. Barnette, 528 So.2d 322, 323 (Ala. 1988), quoting Gulledge v.Frosty Land Foods Int'l, Inc., 414 So.2d 60, 63 (Ala. 1982).
[4] Although Whited and Holmes, in their briefs before this Court, cite these figures, which total $7,409.25, the trial court's order includes in the estate a total of $6,800 for "Cattle (subsequently sold)." Neither the record nor the briefs explain the discrepancy in these amounts.
[5] The following exchange took place at trial between Whited's attorney and Holmes:
 "Q — I show you what I have marked Plaintiff's Exhibit No. 4 and ask you if that is the check you received for the sale of cattle that you sold nine days before [Glenn Holmes] died?
"A — It looks like it.
"Q — What account did that go into?
"A — Laura Jean Holmes and Glenn Holmes.
"Q — Was that account a survivorship account?
"A — Yes it was."