On March 5, 2003, Nathaniel Powell Douglas died intestate in Jefferson County. He left surviving him as the sole heir and distributee of his estate an 18-year-old mentally retarded daughter, Eloise Hoyrd, who was at the time of Nathaniel's death in residence at a facility for unwed mothers, having delivered a child in January 2003. Mary Douglas, Nathaniel's sister, initially filed in the Probate Court of Jefferson County a petition to be named as the administrator of the Nathaniel's estate, in her capacity as Eloise's "guardian." The record reflects in that regard, however, only that in September 1998 the Juvenile Court of Jefferson County had "placed [Eloise] in the care and custody of a maternal aunt, Mary Douglas. . . ." At the time of the proceedings below, Eloise was in a group home "under the custody of the State of Alabama." After Mary "attempted to file a petition for Letters of Administration on behalf of herself," she rescinded that petition by filing a replacement petition on March 12, 2003, asking that Roy F. King, Jr., who was then the county or general administrator for Jefferson County, be named as administrator of Nathaniel's estate. Letters of administration were granted to King that same day but by order entered April 1, 2003, the judge of probate clarified that King had not been appointed in his capacity as county or general administrator, but rather as simply an "other person" the judge had chosen to appoint. § 43-2-42(b)(5), Ala. Code 1975. Both sides to this appeal agree that § 43-2-42(b) controls the priority and preference of the appointment of an administrator. That statute provides that in all counties having a population of 400,000 or more, or in any county having an elected general or county administrator,
 "administration of an intestate's estate must be granted to some one of the persons hereinafter named, if willing to accept and satisfactory to serve, in the following order:
"(1) The husband or widow.
 "(2) The next of kin entitled to share in the distribution of the estate.
 "(3) The largest creditor of the estate residing in this state.
"(4) The county or general administrator.
 "(5) Any other person as the judge of probate may appoint."
The probate judge clarified that his appointment of King as administrator of the estate was pursuant to subsection (b)(5) rather than subsection (b)(4), because an appointment under (b)(4) could be made only after the decedent had been dead for 40 days and no other person entitled to a preference had applied for letters of administration. See § 43-2-171, Ala. Code 1975.
On March 26, 2003, Anthony Douglas, Nathaniel's brother, unaware that letters of administration had been issued to King, filed his own petition, seeking appointment as the administrator of Nathaniel's estate in his role as Eloise's guardian. Subsequently, on March 31, 2003, having learned that his custodianship of Eloise granted by the Jefferson County Family Court in 1987 had been superseded by the subsequent transfer of custody of Eloise to Mary, Anthony filed an amended petition for letters of administration based on his asserted status as "[t]he largest creditor of the estate residing in this state," pursuant to § 43-2-42(b)(3). It is undisputed that on March 9, 2003, Anthony purchased a cemetery lot for the interment of Nathaniel and the next day entered into a contract with a funeral home obligating himself to pay *Page 536 
$6,450 for Nathaniel's casket and his funeral ceremony, paying "down" $350 of that amount. He sought revocation of the letters of administration previously granted to King, on the basis of his and King's relative statutory preference.
Persons eligible for preference appointment may apply within the period of 40 days after the death of the intestate is known, or else they are deemed to have relinquished their right to the administration. § 43-2-43, Ala. Code 1975. If a person eligible for appointment under one of the categories listed in §43-2-43(b) is granted letters of administration within the 40 day period, and a person of higher preference petitions for such letters after letters of administration have been granted but within that period and moves to revoke the earlier granted letters, the probate judge has the authority to make an appropriate adjustment. E.g., Starlin v. Love, 237 Ala. 38,185 So. 380 (1938).
The probate judge conducted a hearing on Anthony's petition for revocation of King's letters of administration and his amended petition for letters of administration, at which Anthony was present and was represented by counsel; Mary was present, represented by counsel; and the guardian ad litem appointed for Eloise was present. Exhibits were introduced and testimony was taken, and on April 1, 2003, the judge of probate issued his order, finding, pertinent to the issues here, that Anthony's claim to status as the largest creditor of the estate residing in the state, "being based on his payment of funeral bills after
the decedent's death herein" could not be accepted because "the payment of funeral bills created a claim post-mortem and is not the basis for appointment as a personal representative" and declining to revoke King's letters of administration.
Anthony appeals, stating the issues as follows:
 "1. Whether the Probate Court erred by holding that a party who claims a preference to administer a decedent's estate as the `largest creditor of the estate residing in this state,' pursuant to § 43-2-42(b)(3), Ala. Code 1975, cannot establish such status based upon the party's payment of the decedent's funeral or burial expenses.
 "2. Whether Appellant Anthony Douglas's acknowledged payment of the decedent's funeral expenses entitles him under § 43-2-42(b) to priority in this case with regard to the administration of the decedent's estate."
Mary and King, as the appellees, frame the issues as follows:
 "I. Under Alabama Code § 43-2-42, is a litigant entitled to a preference as `largest creditor of the estate' over `any other person as the judge of probate may appoint' when the litigant's only standing as `creditor' is the result of his gratuitous payment of estate expenses after the death of the decedent?
 "II. Under Alabama Code § 43-2-42, is a litigant entitled to a preference as `largest creditor of the estate' over the legal guardian of the sole `next of kin' entitled to the full distribution of the estate?"
As to the issue presented by Anthony's two-part statement and by issue I as framed by Mary and King, the language of § 43-2-371
is all important. In declaring the "order of preference" to be accorded the debts against the estates of decedents, that Code section provides:
 "The debts against the estates of decedents are to be paid in the following order.
"(1) The funeral expenses. *Page 537 
"(2) The fees and charges of administration.
"(3) Expenses of the last illness.
 "(4) Taxes assessed on the estate of decedent previous to his death.
 "(5) Debts due to employees, as such, for services rendered the year of the death of the decedent.
"(6) The other debts of the decedent."
Anthony argues that this Code section and § 43-2-42(b), when read together, clearly evidence the intent of the Legislature that funeral expenses are a debt against a decedent's estate and that the person who pays them is therefore entitled to reimbursement of those expenses from the estate and is a creditor of the estate as to that debt. Nowhere in the record, or in the brief filed by Mary and King, is there any claim or suggestion that the amounts expended, or incurred, by Anthony for Nathaniel's funeral were in any way unreasonable or not suitable to the condition of the estate. The sole focus of their arguments seems to be simply that a relative of an intestate decedent who pays or incurs the funeral and burial expenses, and is thereby entitled to reimbursement for those expenses from the estate, is not due recognition as a "creditor" of the estate. Mary and King state in their brief to this Court that they "do not dispute that funeral expenses are required to be repaid first pursuant to Alabama Code § 43-2-371(1)." Their argument is that "there is a distinct legal difference between having a claim for administration expenses and being a `creditor of the estate' under subsection [43-2-42(b)](3)."
Both sides quote Alabama cases they respectively portray as being instructive or controlling to various degrees and present their respective takes on the holdings of those cases; each side distinguishes the readings of those cases proposed by the other side. Those cases are: Lott v. Graves, 67 Ala. 40 (1880);Gayle's Adm'r v. Johnston, 72 Ala. 254, 257 (1882); Owens v.Childs, 58 Ala. 113 (1877); Phillips v. First Nat'l Bank,208 Ala. 589, 94 So. 801 (1922); Murphy v. Freeman, 220 Ala. 634,127 So. 199 (1930); Clark v. Glenn, 249 Ala. 342, 31 So.2d 507
(1947); Terry v. Gresham, 254 Ala. 349, 353, 48 So.2d 437, 440
(1950); Burnett v. Garrison, 261 Ala. 622, 628, 75 So.2d 144,149 (1954); Gilmore v. Roberson, 273 Ala. 230, 139 So.2d 604
(1962); Lenton v. Lawler, 641 So.2d 794 (Ala. 1994); andWhited v. Holmes, 816 So.2d 20 (Ala. 2001).
We have read each of those cases, and none of them are directly on point. The parties cite to several of them only for the comfort they take from admitted dicta. In several instances, the statutory framework then applicable, the legal principles then otherwise in effect, and the peculiar facts of the case detract from, or are totally inconsistent with, the reading the party advancing the case gives it. None of them are dispositive of the first issue now before us. Anthony frankly acknowledges that the question "is one of first impression in Alabama."
Both parties also cite cases from other jurisdictions, but, in each instance, the different statutory framework of those cases renders them only indirectly helpful. For example, in Hildebrandv. Kinney, 172 Ind. 447, 87 N.E. 832 (1909), relied on by Mary and King, the Supreme Court of Indiana observed that "[o]ur statute seems to recognize the distinction between debts of the decedent and liabilities of his estate, in the provision for distribution `that the debts and liabilities of a decedent shall, if his estate be solvent, be paid in the following order of classes.' Burns' Ann. St. 1908, § 2901." 172 Ind. at 450,87 N.E. at 835. Unlike the Indiana statute quoted in Hildebrand, §43-2-371, Ala. Code 1975, *Page 538 
does not address the payment of "debts and liabilities of a decedent," but rather "debts against the estates of decedents."
 "`"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'"
Ex parte Alabama Dep't of Mental Health Mental Retardation,840 So.2d 863, 867 (Ala. 2002) (quoting Ex parte Master BoatBuilders, Inc., 779 So.2d 192, 196 (Ala. 2000), quoting in turnIMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346
(Ala. 1992)).
Section 43-2-371 clearly classifies "funeral expenses" among the general category of "other debts against the estates of decedents." Only subsection (6) refers to "[t]he other debts of the decedent." Therefore, within the larger category of "debts against the estates of decedents" are funeral expenses and the more specific category of "other debts of the decedent." InWhited v. Holmes, supra, this Court recently explained that "[p]ayment of funeral expenses by a personal representative are debts of a decedent and are properly charged against the decedent's estate." 816 So.2d at 25. As explained in Wommock v.Davis, 228 Ala. 362, 153 So. 611 (1934), cited in Whited, burial expenses paid during the statutorily prescribed moratorium on appointing an administrator (now 5 days after the death of the intestate is known, under § 43-2-45, Ala. Code 1975; then 15 days) are to be repaid "by the personal representative having assets, though he neither ordered, nor had knowledge of the expenditure," because a "burial, of necessity, here devolves as a duty upon friends or relatives." Priority of such payment was acknowledged to be recognized by statute, "as at common law," because such expense "when paid by a friend or relative, is regarded as money paid on request of the personal representative; and the law raises a promise to repay it, so far as he has assets."228 Ala. at 364, 153 So. at 612.
In Canada v. Canada, 243 Ala. 109, 8 So.2d 846 (1942), also cited in Whited, this Court declared that "funeral expenses and expenses of the last illness were debts of the decedent and a lawful charge against all of the estate of decedent, notwithstanding the fact that they had been paid by the widow from her personal moneys." 243 Ala. at 113, 8 So.2d at 849.Webster's Third New International Dictionary 533 (1971) gives this definition of "creditor": "Any person to whom a debt is owed." Likewise, Merriam Webster's Collegiate Dictionary 294 (11th ed. 2003) defines creditor as "one to whom a debt is owed," as does Black's Law Dictionary 375 (7th ed. 1999). Webster'sNew International Dictionary of the English Language 621 (2d ed., unabridged 1956) observes that "creditor" is the "correlative to debtor." Thus, because the estate is clearly a debtor for the funeral expenses, pursuant to the plain language of § 43-2-371, the person to whom those funeral expenses are due to be reimbursed can easily be understood under that plain language to be a "creditor" of the estate.
Although no transcript of the ore tenus hearing conducted by the probate judge is contained in the record, the issues presented do not depend upon any disputed issues of fact but rather involve the probate *Page 539 
judge's interpretation of the phrase "creditor of the estate" in § 43-2-42(b)(3). "The trial court's interpretation of [a statute] involves a question of law; it is reviewed de novo by an appellate court, without any presumption of correctness."Simcala, Inc. v. American Coal Trade, Inc., 821 So.2d 197, 200
(Ala. 2001).
The second "issue," as argued by Mary and King, is whether, even if Anthony is entitled to a preference appointment as administrator by virtue of his status as the largest creditor of the estate in this state, Mary has a higher preference as a result of her status as Eloise's legal guardian. She urges us to consider this argument under the principle that this Court can affirm a decision of a lower court if it is correct for any reason. This particular reason would not be a valid one even if we deemed it available for our review, however, because Mary intentionally waived and abandoned any right she had to have letters of administration issued in her name (and never reasserted them within the statutorily prescribed 40 day time limit) by voluntarily withdrawing her initial petition and replacing it with one expressly asking that King be appointed administrator, which he was, on the same day her superseding petition was filed. Mary attempts to avoid the effect of her waiver in that regard by arguing in her brief to this Court that she had initially petitioned within the proper time period to be appointed administrator because she was Eloise's guardian but that "the Probate Court mistakenly rejected that status and required her to amend her petition to name Roy King as personal representative." (Mary and King's brief, p. 38.) Mary has not challenged that ruling as error, however, by filing any cross-appeal. Therefore, it is not eligible for our consideration. See Eskridge v. Allstate Ins. Co., 855 So.2d 469
(Ala. 2003).
 Conclusion
Because Anthony duly established his status as the "largest creditor of the estate residing in this state," under the plain meaning of § 43-2-42(b)(3), when read in pari materia with §43-2-371, and because the probate judge did not find Anthony due to be disqualified under § 43-2-22, or "[un]satisfactory to serve" under § 43-2-42(b), but clearly denied him letters of administration solely on the basis that his payment of Nathaniel's burial and funeral expenses was "post-mortem," we conclude as a matter of law that it was error for the probate judge to reject Anthony's petition for preferential grant of letters of administration. Also, for the reasons explained, his preference status was not "trumped" by the higher preference status Mary, as Eloise's "guardian," might possibly have had if she had not waived that preference. Accordingly, the April 1, 2003, order of the probate judge denying Anthony letters of administration on Nathaniel's estate and refusing to revoke the letters of administration granted to King as "any other person" is reversed and this cause remanded to the Probate Court of Jefferson County for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, JOHNSTONE, WOODALL, and STUART, JJ., concur.
SEE and BROWN, JJ., concur in the result. *Page 540