Lucy Gravlee Chapman, M.D.; Anesthesiology Pain Medicine, P.C.; and HealthSouth Medical Center, Inc. (hereinafter collectively referred to as "the appellants"), appeal from the judgment of the Jefferson Circuit Court granting Linda P. Smith and Jimmy Joe Smith's postjudgment motion and ordering a new trial. We affirm in part and reverse in part.
 Facts and Procedural History
On June 24, 1996, Linda P. Smith sued the appellants, alleging medical malpractice based on Dr. Chapman's allegedly negligent administration of a cervical epidural injection performed on July 20, 1994.[1] Linda's husband, Jimmy Joe Smith, also sued the appellants, stating a derivative claim of loss of consortium. The case went to trial on January 14, 2002. The Smiths presented the testimony of their daughter; they then attempted to present testimony of their two proffered expert witnesses, Dr. Pawan Grover and Dr. William Kendall.[2] The appellants objected to their testimony on the basis that neither Dr. Grover nor Dr. Kendall was qualified to testify at trial. On January 16, 2002, the trial court issued an order in open court, which provided, in pertinent part:
 "Based on the materials submitted to the Court, the Court rules that Dr. Pawan Grover is not qualified to testify as an expert in this case because he was not board-certified in anesthesiology in the year preceding the event which gives rise to the cause of action in this case. *Page 295 
 "Considering the testimony of Dr. William R. Kendall in his deposition given on January 11, 2002, the Court grants the motion of [the appellants] that, as a matter of law, Dr. Kendall has not established the standard of care as to the use of fluoroscopy in cervical epidural steroid injections. Thus, judgment is rendered in favor of [the appellants] and against the [Smiths] on that issue."
After both of the Smiths' expert witnesses were disqualified, the appellants moved for a judgment as a matter of law ("JML"). On February 11, 2002, the trial court granted the appellants' motion and entered a JML for the appellants. On March 12, 2002, the Smiths filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the trial court's judgment. On May 30, 2002, the trial court entered an order providing, in pertinent part:
"[T]he Court finds as follows:
 "That Dr. Pawan Grover was not permitted to testify at trial. That Dr. Pawan Grover met the criteria of Alabama Code § 6-5-548(c) and, therefore, was a similarly situated health care provider competent to give expert testimony. That the failure of the Court to allow Dr. Pawan Grover to testify was fatal to the [Smiths'] claim and resulted in the Court rendering judgment in favor of the [appellants].
 "Accordingly, the motion to alter, amend, or vacate is granted and the Court's order on February 11, 2002, is hereby vacated. All orders purporting to strike the testimony of Dr. Pawan Grover and Dr. William Kendall are hereby vacated. This case is hereby reinstated to the active docket and set for jury trial on September 30, 2002, at 9:00 a.m."[3]
On June 27, 2002, the appellants filed a notice of appeal.
 Standard of Review
This Court reviews a trial court's rulings on postjudgment motions to determine whether the trial court exceeded its discretion. See Flagstar Enters., Inc. v. Foster,779 So.2d 1220, 1221 (Ala. 2000).
 "Whether to grant or deny a postjudgment motion filed pursuant to Rule 59 is within the sound discretion of the trial court. Flagstar Enters., Inc. v. Foster, 779 So.2d 1220 (Ala. 2000). We will not disturb the exercise of that discretion unless the trial court exceeded the permissible limits of its discretion. Flagstar, 779 So.2d at 1221; Comalander v. Spottswood, 846 So.2d 1086 (Ala. 2002)."
Borders v. City of Huntsville, 875 So.2d 1168, 1176 (Ala. 2003). "Abuse of discretion by a trial court in granting a Rule 59(e) motion can be found only where a legal right was abused and the record plainly and palpably shows the trial court was in error." Lockhart v. Phenix City Inv. Co., 488 So.2d 1353, 1354
(Ala. 1986).
 Discussion I.
The appellants argue that the trial court exceeded its discretion in granting the Smith's Rule 59(e) motion based on its conclusion that Dr. Pawan Grover was qualified to testify as an expert witness in this case. Specifically, the appellants contend that because Dr. Grover was not a board-certified specialist during the year preceding the appellants' alleged breach of the standard of care, he is not similarly *Page 296 
situated to Dr. Chapman, who is board-certified in anesthesiology and in pain management, and thus cannot testify concerning the appropriate standard of care Dr. Chapman should have exercised in administering the cervical epidural injection. The Smiths, however, argue that the appellants misconstrue the meaning of §6-5-548(c), Ala. Code 1975, a part of the Alabama Medical Liability Act of 1987, § 6-5-540 et seq., Ala. Code 1975 ("the Act"), and maintain that Alabama law does not require that Dr. Grover be board-certified during the year preceding the alleged malpractice in order to testify as an expert in a medical-malpractice action.
In any medical-malpractice action, the plaintiff has the burden of proving by substantial evidence that the health-care provider failed to exercise the reasonable care, skill, and diligence that other similarly situated health-care providers in the same general line of practice would ordinarily exercise in like cases. § 6-5-548(a), Ala. Code 1975. "`To maintain a medical-malpractice action, the plaintiff ordinarily must present expert testimony from a "similarly situated health-care provider". . . .'" Cainv. Howorth, 877 So.2d 566, 576 (Ala. 2003) (quoting Lyons v.Walker Reg'l Med. Ctr., 791 So.2d 937, 942 (Ala. 2000)). This Court has established the following three-part test for determining whether a medical expert is qualified to testify against a defendant health-care provider in a medical-malpractice action brought under the Act:
 "A court must determine (1) the standard of care the plaintiff alleges the defendant breached; (2) whether the defendant who is alleged to have breached the standard of care is a specialist in the area of care in which the breach is alleged to have occurred; and (3) whether the expert is qualified under the criteria set out in the relevant statute."
Ex parte Waddail, 827 So.2d 789, 793 (Ala. 2001) (citingMedlin v. Crosby, 583 So.2d 1290, 1293 (Ala. 1991)).
In this case, the Smiths allege that Dr. Chapman breached the standard of care that an anesthesiologist, practicing in chronic pain management, would exercise in administering a cervical epidural injection to a patient.[4] It was undisputed at trial that Dr. Chapman was a specialist in anesthesiology and in pain management.[5] Thus, the main issue presented to the trial court and to this Court concerning Dr. Grover's testimony at trial is whether Dr. Grover is qualified to testify against Dr. Chapman as an expert witness pursuant to § 6-5-548(c), Ala. Code 1975; § 6-5-548(c) provides:
 "Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, if the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced *Page 297 
in a medical specialty, and holds himself or herself out as a specialist, a `similarly situated health care provider' is one who meets all of the following requirements:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same specialty.
 "(3) Is certified by an appropriate American board in the same specialty.
 "(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred."
The appellants argue that Dr. Grover was not similarly situated to Dr. Chapman because Dr. Grover was not board-certified in anesthesiology or in pain management during the year preceding Dr. Chapman's alleged breach of the standard of care in this case. According to the appellants, although § 6-5-548(c)(3) does not explicitly require that a proffered expert witness be board-certified in a specialty during the year preceding the alleged breach in a case, a doctor cannot practice in a specialty as required by subsection (4) unless he or she is certified by an appropriate American board as a specialist as required in subsection (3). Thus, the appellants contend, this Court should construe subsection (3) of § 6-5-548(c) to require that a proffered expert witness be board-certified by an appropriate American board in the same specialty as the defendant during the year preceding the date on which the alleged breach of the standard of care occurred.
The Smiths, however, argue that a doctor can practice in the specialty of pain management without being board-certified. The appellants' previously noted contention to the contrary is not supported by a reference to the record. Consequently, we resolve this issue in favor of the Smiths. Furthermore, the Smiths assert that the plain language of § 6-5-548(c) does not require that, before he can qualify as a similarly situated health-care provider, Dr. Grover be board-certified in anesthesiology and in pain management during the year preceding Dr. Chapman's alleged breach of the standard of care. Thus, according to the Smiths, this Court should not interpret subsection (3) to require that a proffered expert be board-certified during the year preceding the alleged breach. We agree.
 "`"`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"'
 "Ex parte Alabama Dep't of Mental Health Mental Retardation, 840 So.2d 863, 867 (Ala. 2002) (quoting Ex parte Master Boat Builders, Inc., 779 So.2d 192, 196 (Ala. 2000), quoting in turn IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346
(Ala. 1992))."
Douglas v. King, 889 So.2d 534, 538 (Ala. 2004).
The controlling statute in this case, § 6-5-548(c), states in subsection (3) that a proffered expert witness must be "certified by an appropriate American board in the same specialty" as the specialist charged with medical malpractice in order to testify against a specialist concerning the applicable *Page 298 
standard of care. There are no qualifications in subsection (3) as to the period of time the proffered expert must be board-certified before he or she can testify against a specialist. Section 6-5-548(c) further mandates in subsection (4) that the proffered expert must only have practiced in the specialty "during the year preceding the date that the alleged breach of the standard of care occurred." According to the plain language of § 6-5-548(c), the only qualifications as to length of time the Legislature has placed on a proffered expert witness is that the witness have practiced the necessary specialty during the year preceding the alleged breach. Construing the plain language of § 6-5-548(c), we must conclude that the Legislature chose not to require that a proffered expert witness testifying against a specialist be board-certified in the same specialty during the year preceding the alleged breach of the standard of care. Thus, the appellants' argument that Dr. Grover is not qualified to testify concerning the applicable standard of care in this case because he was not board-certified in anesthesiology or in pain management during the year preceding the alleged breach in this case must fail.
 II.
The appellants also contend that the trial court exceeded its discretion in ruling that the testimony of the Smiths' other proffered expert witness, Dr. Kendall, could be considered at trial because, according to the appellants, Dr. Kendall is not a similarly situated health-care provider to Dr. Chapman. Specifically, the appellants argue that, although Dr. Kendall has had experience in pain management, he has never been board-certified in that specialty and, thus, is not qualified pursuant to § 6-5-548(c), Ala. Code 1975, to testify against Dr. Chapman concerning the standard of care applicable in this case.[6] The Smiths did not respond at trial or on appeal to the appellants' allegation that Dr. Kendall was not qualified to testify against Dr. Chapman.
Because it was undisputed at trial that Dr. Chapman was a specialist in anesthesiology and pain management and that she was practicing in pain management at the time of the alleged breach, § 6-5-548(c)(3), Ala. Code 1975, requires that any proffered expert witness testifying against her must be certified by an appropriate American board in the same specialties. Section6-5-548(e), Ala. Code 1975, further explains:
 "It is the intent of the Legislature that in the event that the defendant health care provider is certified by an appropriate American board or in a particular specialty and is practicing that specialty at the time of the alleged breach of the standard of care, a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care . . . against another health care provider only if he or she is certified by the same American board in the same specialty."
(Emphasis added.)
We have reviewed Dr. Kendall's deposition testimony and his curriculum vitae, and it is clear that Dr. Kendall has never been board-certified in pain management. Thus, he is not qualified, pursuant to § 6-5-548(c), Ala. Code 1975, to testify against Dr. Chapman concerning the standard of care she ought to have exercised in administering treatment for pain management, *Page 299 
and the trial court exceeded the permissible limits of its discretion in ruling that Dr. Kendall's testimony was admissible.
 Conclusion
The trial court acted within its discretion in ruling that Dr. Grover was qualified to testify against Dr. Chapman as to the standard of care that Dr. Chapman should have exercised in this case. However, the trial court exceeded its discretion in finding that Dr. Kendall was qualified to testify against Dr. Chapman concerning the applicable standard of care. Therefore, we affirm the trial court's May 30, 2002, order granting the Smiths' motion to alter, amend, or vacate its February 11, 2002, judgment and setting the case for a new trial insofar as it held that Dr. Grover was qualified to testify against Dr. Chapman, and we reverse the May 30, 2002, order insofar as it held that Dr. Kendall was qualified to testify against Dr. Chapman. We remand this case for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Apparently, the purpose of the treatment was to alleviate Linda's chronic back pain. Before the July 20, 1994, treatment, Dr. Chapman had administered to Linda one other cervical epidural injection for the purpose of alleviating her back pain.
[2] Dr. Grover actually testified at trial. The appellants' objection to the experts' testimony was made before Dr. Kendall's deposition testimony could be read into the record.
[3] It appears that, during the interim between the trial court's February 11, 2002, order and its May 30, 2002, reversal of that order, Judge Jack D. Carl, the judge presiding over this case, retired and Judge Houston Brown was appointed to replace Judge Carl.
[4] Dr. Grover testified that the cervical epidural injection Dr. Chapman administered in this case was not a procedure for general anesthesia but was a pain-management procedure. Dr. Grover explained that "[p]ain management is a specialized field of anesthesiology because of our experience with . . . injections."
[5] Dr. Grover testified at trial that Dr. Chapman was board-certified in pain management by the American Academy of Pain Management; he explained that that organization is "an academy of specialists who . . . give out a board. . . ." However, the Smiths now allege for the first time on appeal that Dr. Chapman was not board-certified in pain management as of July 20, 1994. The Smiths did not make this argument to the trial court at any time before, during, or after trial. Furthermore, the record contains no facts supporting that allegation.
[6] The appellants made this argument to the trial court in their motion to strike Dr. Kendall's testimony and in their response to the Smiths' motion to alter, amend, or vacate the trial court's February 11, 2002, judgment. Thus, this issue was properly presented to the trial court and has been preserved for appellate review.