*1261
 
 SMITH, Justice.
 

 These three appeals have been consolidated. In eases no. 1090093, no. 1090094, and no. 1090096, April Ann Archer, by and through her mother and next friend, Regina Leigh Archer (“Archer”), appeals from that portion of an order of the Lauderdale Circuit Court prioritizing the payment of attorney fees after the payment of certain other debts against the estate of Mark Russell Archer (“the Archer estate”). Archer also appeals from the trial court’s order insofar as it declares that certain assets currently held in the trust account of Archer’s attorneys are April’s assets. We affirm in part, reverse in part, and remand with instructions.
 

 Facts and Procedural History
 

 These appeals are before this Court on briefs filed only by Archer; accordingly, for purposes of these appeals, we will base our decision on the facts as stated in Archer’s brief.
 
 [1]
 

 See Johnson v. Stewart,
 
 854 So.2d 544, 551-52 (Ala.2002) (opinion on application for rehearing) (“Where the ap-pellee makes no correction or addition to the appellant’s statement of the facts, ‘[t]he statements made by appellant ... will be taken to be accurate and sufficient for decision.’ ” (quoting
 
 Taylor v. First Nat’l Bank of Tuskaloosa,
 
 279 Ala. 624, 628, 189 So.2d 141, 144 (1966))).
 

 Ann Russell Girdner died on December 25, 2004. Girdner’s will essentially divided her estate equally between her two sons, Jeffrey H. Archer, who was appointed personal representative of Girdner’s estate (“the Girdner estate”) under the will, and Mark Russell Archer. Mark died on January 16, 2006, leaving as his sole heir his minor daughter, April Ann Archer. April’s mother, Regina Leigh Archer, was appointed personal representative of the Archer estate.
 

 At some point, Regina came to believe that Jeffrey was “mishandling and misappropriating” assets of the Girdner estate and that Jeffrey’s actions were adversely affecting the value of the Archer estate. As a result, Archer petitioned the Lauder-dale Probate Court for an order removing Jeffrey as personal representative of the Girdner estate and requiring an accounting of the assets of the Girdner estate. The petition alleged that the Girdner estate consisted of realty and personalty with a total value exceeding $1,000,000.
 

 On March 21, 2006, Archer petitioned the circuit court to remove the administration of the Girdner estate from the probate court to the circuit court; the circuit court granted the petition. Thereafter ensued what-Archer refers to as “a lengthy, costly, risky, and intensive litigation battle that spawned several legal actions,” Archer’s brief, p. 8, including the cases from which the present appeals were taken. Ultimately, Archer and Jeffrey entered into a settlement agreement, which increased the value of the Girdner estate and the Archer estate by a combined total of $544,315. The trial court entered an order adopting the settlement agreement on December 22, 2008.
 

 In January 2009, Archer; Archer’s attorneys, Frank V. Potts and James Irby; and James Hall, the guardian ad litem appointed to represent April, filed a “joint motion for reopening of estate cases for approval of attorney fees, costs and relat
 
 *1262
 
 ed, necessary expenses.” The motion alleged that “[t]he attorney fee in this matter is contingent” and requested that the trial court approve attorney fees for Potts and Irby of one-third of the $544,315 they had recovered for the Girdner estate and the Archer estate, collectively; the motion also requested, among other things, that the trial court approve a fee of $2,182.50 for Hall as guardian ad litem.
 

 After a hearing, the trial court entered an order on May 27, 2009, that, among other things, granted the motion for approval of attorney fees, costs, and expenses. The order found as follows:
 

 “5. The litigation referenced above was complex, protracted and necessary to preserve the assets of the [Girdner estate] on behalf of [April].
 

 “6. The representation of Frank V. Potts and James Irby was directly responsible, in the above-referenced matters, for increasing the value of both the [Girdner estate] and the [Archer estate] by a total of $544,315.00.
 

 [[Image here]]
 

 “8. The property located at_Will-ingham Road, Florence, Alabama, 35630, and the property located at _ Michael Court, Florence, Alabama, 35630, and $148,314.18 ... in liquid assets, currently held in the Trust Account of Potts & Young Attorneys, L.L.P., are all assets of [April], directly secured through the efforts referenced in paragraph 6,
 
 supra.
 

 “9. All costs and expenditures of the above-referenced litigation ... were necessary as being directly related to the preservation and recovery of the assets of the [Girdner estate] for [April], and are approved by this Court. The reimbursement of all costs and expenses to Potts & Young Attorneys, L.L.P., and to James Irby, P.C., were necessary and appropriate and are approved by this Court.
 

 [[Image here]]
 

 “11. The claim against the [Archer estate] by the Health Care Authority and the City of Florence, a public authority d/b/a Eliza Coffee Memorial Hospital in the amount of $2,900.00 ... is appropriate, due and immediately payable.
 

 “12. A first mortgage against the property currently serving as [April’s] residence, located on _ Road,
 

 Florence, Alabama, 35630, held by Cecil and Olivia Batchelor, is due and immediately payable in the amount of $103,299.83.
 

 “13. The promissory note in the amount of $19,104.70 ... held by Shirley Rivera is due to be paid in full, in priority behind the claim against the [Archer estate] by The Health Care Authority of Lauderdale County and the City of Florence (an expense of Mark Archer’s last illness), the first mortgage to [Cecil and Olivia] Batchelor and the attorney fees.”
 

 The trial court then ordered as follows: “E. So as to preserve the assets of the [Archer estate], it is further ordered that the first mortgage against the property currently serving as [April’s] residence, located on _ Road, Florence, Alabama, 35630, held by Cecil and Olivia Batchelor, is ORDERED to be immediately and fully retired from the liquid assets currently held in the IOLTA Trust Account of Potts & Young, Attorneys, L.L.P.;
 

 “F. So as to preserve the assets of the [Archer estate], it is further ordered that the promissory note in the amount of $19,104.70 ... held by Shirley Rivera is ORDERED to be immediately paid from the liquid assets currently held in the IOLTA Trust Account of Potts & Young, Attorneys, L.L.P.”
 

 
 *1263
 
 The trial court’s order provided that the attorney fees be paid as follows:
 

 “a. $19,474.36 ... from the liquid assets of the assets stated in paragraph 8,
 
 swpra;
 

 “b. $165,809.86 ... and any other future allowable attorney fees are to be recovered from the eventual sale of the Willingham Road or Michael Court property or from the future recovered liquid assets owed through the settlement agreement herein referenced.
 

 “c. Guardian ad Litem fee of [$]2182.50 from the liquid assets of the assets stated in paragraph 8,
 
 supra.”
 

 Archer moved the trial court to alter, amend, or vacate its May 27, 2009, order; the trial court denied the motion. Archer timely appealed.
 

 Standard of Review
 

 “Our standard of review is de novo: ‘Because the issues presented by [this appeal] concern only questions of law involving statutory construction, the standard of review is de novo.
 
 See Taylor v. Cox,
 
 710 So.2d 406 (Ala.1998).’
 
 Whitehurst v. Baker,
 
 959 So.2d 69, 70 (Ala.2006). This Court has also said:
 

 “ ‘[I]t is this Court’s responsibility in a case involving statutory construction to give effect to the legislature’s intent in enacting a statute when that intent is manifested in the wording of the statute.
 
 Bean Dredging[, LLC v. Alabama Dep’t of Revenue],
 
 855 So.2d [513] at 517 [ (Ala.2003) ] .... “ ““If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’ ”
 
 Pitts v. Gangi
 
 896 So.2d 433, 436 (Ala.2004) (quoting
 
 DeKalb County LP Gas Co. v. Suburban Gas, Inc.,
 
 729 So.2d 270, 275 (Ala.1998), quoting in turn earlier cases). In determining the intent of the legislature, we must examine the statute as a whole and, if possible, give effect to each section.
 
 Employees’ Retirement Sys. of Alabama v. Head,
 
 369 So.2d 1227, 1228 (Ala.1979).’
 

 “Ex parte Exxon Mobil Corp.,
 
 926 So.2d 303, 309 (Ala.2005). Further,
 

 “ ‘when determining legislative intent from the language used in a statute, a court may explain the language, but it may not detract from or add to the statute.
 
 Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n,
 
 575 So.2d 1041, 1045 (Ala.1991). When the language is clear, there is no room for judicial construction.
 
 Employees’ Retirement System [v. Head],
 
 369 So.2d [1227,] 1228 [ (Ala.2002) ].’
 

 “Water Works & Sewer Bd. of Selma v. Randolph,
 
 833 So.2d 604, 607 (Ala.2002).”
 

 Ex parte Birmingham Bd. of Educ.,
 
 45 So.3d 764, 767 (Ala.2009).
 

 Discussion
 

 Archer presents the following issue on appeal:
 

 “When reasonable, necessary and appropriate attorneys fees are incurred in producing a recovery for an estate, and those fees are agreed upon by all of the parties and approved by the court, can the trial court then declare those fees to be assets of a beneficiary, and order the law firm earning those fees to pay the money to third-party creditors in violation of the statutory priority of payment enumerated in [Ala.Code 1975,] § 43-2-371?”
 

 Archer’s brief, p. 7. In conjunction with this argument, Archer contends:
 

 “[T]he court declared in Paragraph 8 that the liquid assets held by Potts & Young Attorneys, L.L.P., for attorneys
 
 *1264
 
 fees, are all assets of [April’s] ... even though the [Girdner estate] and the [Archer estate] have not been closed out. [April’s] entitlement to any remaining assets net of payment of claims in accordance with § 4[3]-[2]-371, cannot yet be determined.”
 

 Archer’s brief, pp. 15-16 (citations to the record omitted).
 

 Alabama Code 1975, § 43-2-371, provides:
 

 “The debts against the estates of decedents are to be paid in the following order:
 

 “(1) The funeral expenses.
 

 “(2) The fees and charges of administration.
 

 “(3) Expenses of the last sickness.
 

 “(4) Taxes assessed on the estate of the decedent previous to his death.
 

 “(5) Debts due to employees, as such, for services rendered the year of the death of the decedent.
 

 “(6) The other debts of the decedent.”
 

 Archer argues that the trial court violated the plain language of § 43-2-371 by giving the payment of the attorney fees a priority behind payment of both the claim by Eliza Coffee Memorial Hospital, which the trial court characterized as “an expense of Mark Archer’s last illness,” and the first mortgage against the residence where April resides. Archer contends that in the present case the payment of attorney fees falls under § 43-2-371(2) as a part of “[t]he fees and charges of administration” of the estate. Therefore, Archer claims, the payment of attorney fees has priority over the payment of all other debts of the Archer estate other than the funeral expenses.
 

 Archer argued in the trial court that under § 43-2-371(2), “[t]he fees and charges of administration” in the present case included an award of reasonable attorney fees and costs. The trial court’s order, as noted above, found that the litigation Archer maintained “was complex, protracted and necessary to preserve the assets of the [Girdner estate] on behalf of [April]” and that the efforts of Archer’s attorneys were “directly responsible ... for increasing the value of both the [Gird-ner estate] and the [Archer estate] by a total of $544,315.00.” Additionally, the trial court’s order held that “[a]ll costs and expenditures of the above-referenced litigation ... were necessary as being directly related to the preservation and recovery of the assets of the [Girdner estate] for [April], and are approved by this Court.” Finally, the trial court’s order states that “[t]he reimbursement of all costs and expenses to Potts
 
 &
 
 Young Attorneys, L.L.P., and to James Irby, P.C., were necessary and appropriate and are approved by this Court.”
 
 [2]
 
 We therefore agree with Archer’s contention on appeal that the trial court’s findings establish that the award of reasonable attorney fees and costs in the present cases qualify as “fees and charges of administration” under § 43-2-371(2).
 
 See generally Cashion v. Torbert,
 
 885 So.2d 745, 754-55 (Ala.2003) (affirming the classification of a conservatorship-fee award as “fees and charges of administration” under § 43-2-371(2), Ala.Code 1975, and citing
 
 In re Estate of Desisles,
 
 59 Ill.App.2d 194, 201, 208 N.E.2d 122, 125 (1965), which held that before a claim may be classified as “an expense of administration,” it must be shown that the charge was “reasonably necessary for the preservation and benefit of the estate”).
 

 
 *1265
 
 Under the plain language of § 43-2-371, the award of attorney fees and costs in the present cases should hold second priority as “fees and charges of administration,” and those fees and costs therefore should be paid before both the claim by Eliza Coffee Memorial Hospital, which holds third priority as “[e]xpenses of the last sickness,” and the first mortgage against the residence in which April resides, which holds sixth priority as “other debts of the decedent.” The trial court, however, prioritized payment of the attorney fees behind payment of the above-referenced claims.
 

 Archer contends that “a judge does not have the discretion to determine priority of payments from estate proceeds because the statute governing such priority is clear, unambiguous, and must be followed.” Archer’s brief, p. 18 (emphasis omitted). In support of this argument, Archer cites
 
 Douglas v. King,
 
 889 So.2d 534 (Ala.2004), for the following proposition:
 

 “ ‘ “ ‘The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’ ”
 

 889 So.2d at 538 (quoting
 
 Ex parte Alabama Dep’t of Mental Health & Mental Retardation,
 
 840 So.2d 863, 867 (Ala.2002), quoting in turn
 
 Ex parte Master Boat Builders, Inc.,
 
 779 So.2d 192, 196 (Ala.2000), quoting in turn
 
 IMED Corp. v. Systems Eng’g Assocs. Corp.,
 
 602 So.2d 344, 346 (Ala.1992)).
 

 We agree with Archer’s contention that the trial court’s order, by failing to give the award of attorney fees and costs priority over the above-referenced claims, is inconsistent with the plain language of § 43-2-371. Thus, the trial court’s order is due to be reversed as to this issue.
 
 See Douglas,
 
 889 So.2d at 538 (“““Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.’ ” ’ ”);
 
 Ex parte Birmingham Bd. of Educ.,
 
 45 So.3d at 767 (“ ‘When the [statutory] language is clear, there is no room for judicial construction.’ ” (quoting
 
 Water Works & Sewer Bd. of Selma v. Randolph,
 
 833 So.2d at 604, 607 (Ala.2002)));
 
 see also Eisenberg v. Reininger,
 
 90 Colo. 511, 512-13, 10 P.2d 945, 946 (1932) (“The statute [prioritizing payment of claims against an estate] is definite, certain, and mandatory, and must be construed according to its plain and indisputable intendment. Demands which are legally adjudicated under classifications first, second, and third, take precedence over a ... demand of the fourth class.”); and
 
 City of Durham v. Hicks,
 
 135 N.C.App. 699, 703, 522 S.E.2d 583, 585 (1999) (“The purpose of the ranking system [in statute prioritizing payment of claims against an estate] is to provide orderly administration of estates, with proper safeguards and definite rules to benefit all creditors.”).
 

 As to Archer’s contention that “[April’s] entitlement to any remaining assets net of payment of claims in accordance with § 4[3] — [2]—371, cannot yet be determined” because the Girdner estate and the Archer estate have not yet been closed, Archer’s brief cites no authority in support of this issue. Thus, Archer has
 
 *1266
 
 failed to comply with the requirements of Rule 28(a)(10), Ala. R.App. P., which provides that arguments in an appellant’s brief shall contain “citations to the cases, statutes, other authorities, and parts of the record relied on.” “ ‘ “ ‘Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.”””
 
 J.K v. UMS-Wright Corp.,
 
 7 So.3d 300, 306 (Ala.2008) (quoting
 
 McCutchen Co. v. Media General, Inc.,
 
 988 So.2d 998, 1004 (Ala.2008), quoting in turn
 
 Henderson v. Alabama A & M Univ.,
 
 483 So.2d 392, 392 (Ala.1986), quoting in turn
 
 Gibson v. Nix,
 
 460 So.2d 1346, 1347 (Ala.Civ.App.1984)). This Court has stated that “[w]e are unable to address the merits of a particular argument when the party asserting it presents no authorities in support of it.”
 
 Edgeworth v. Family Chiropractic & Health Ctr., P.C.,
 
 940 So.2d 1011, 1022 (Ala.2006) (citing
 
 Crutcher v. Wendy’s of North Alabama, Inc.,
 
 857 So.2d 82, 97 (Ala.2003)). Accordingly, the trial court’s order is due to be affirmed as to this issue.
 

 Conclusion
 

 Based on the foregoing, we affirm the trial court’s order insofar as it concluded that the liquid assets currently held in the trust account of Potts & Young, Attorneys, L.L.P., are April’s assets because Archer wholly failed to present to this Court any authority in support of that issue. We reverse the trial court’s order insofar as it prioritized the payment of the attorney fees behind the payment of both the claim by Eliza Coffee Memorial Hospital and the first mortgage against the residence in which April resides. We remand the cause to the trial court with instructions to enter an order consistent with this opinion.
 

 1090093 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 1090094 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 1090096 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 COBB, C.J., and WOODALL, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . Archer filed separate briefs in cases no. 1090093, no. 1090094, and no. 1090096. The briefs Archer filed are virtually identical in content; thus, for ease of reference, all citations to “Archer's brief" in this opinion refer to the brief filed in case no. 1090094. The defendant below, Jeffrey H. Archer, the personal representative of Ann Russell Girdner’s estate, submitted a document to this Court waiving the filing of a brief.
 

 [2]
 

 . As noted, the defendant below, Jeffrey H. Archer, the personal representative of the Girdner estate, filed no brief with this Court, and, as a result, he has waived any objection to the trial court’s findings as to this issue.